IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

---

ADRIAN E.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,
*Appellee*.

---

L.E. AND I.E.,
*Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY,
*Appellee*.

---

Nos. 2 CA-JV 2015-0064 and 2 CA-JV 2015-0074 (Consolidated)
Filed April 5, 2016

---

Appeals from the Superior Court in Pima County
Nos. S20140305, JD196618, and D20120267 (Consolidated)
The Honorable Jane Butler, Judge Pro Tempore

**REVERSED**

---

COUNSEL

Jacqueline Rohr, Tucson
*Counsel for Appellant Adrian E.*

Pima County Office of Children's Counsel, Tucson
By Sarah Richelson
*Counsel for Appellants L.E. and I.E.*

Mark Brnovich, Arizona Attorney General
By Cathleen E. Fuller, Assistant Attorney General, Tucson
*Counsel for Appellee Department of Child Safety*

---

**OPINION**

---

Presiding Judge Vásquez authored the opinion of the Court, in which Judge Miller and Judge Espinosa concurred.

---

V Á S Q U E Z, Presiding Judge:

**¶1**        In their consolidated appeals, Adrian E. and his minor children, L.E. and I.E., challenge the juvenile court's termination of Adrian's parental rights pursuant to A.R.S. § 8-533(B)(11). They argue that subsection of the statute does not apply to a parent like Adrian, who was only granted the right to supervised visitation in the prior dependency and related family-court proceedings, whereas the children's mother, from whose home the children were removed, had been granted primary physical custody and "[s]ole legal decision-making" authority. A.R.S. § 25-401(6). Appellants also contend the court abused its discretion in finding termination of Adrian's rights was in the children's best interests. The Department of Child Safety (DCS) has conceded Adrian's rights could not be terminated pursuant to § 8-533(B)(11). We agree and therefore reverse the court's order.

**Factual and Procedural Background**

**¶2**        We view the evidence in the light most favorable to sustaining the juvenile court's ruling. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, ¶ 2, 181 P.3d 1126, 1128 (App. 2008). Adrian and Crystal W., the mother of L.E. and I.E., born in 2007 and

2009 respectively, were divorced in August 2010.[1] Crystal was awarded sole custody of the children, subject to Adrian's reasonable parenting time. But in October 2010, Crystal brought the children to Adrian at his place of employment and demanded that he take them. They were wearing nothing but diapers, had no car seats, and I.E. had scratches on his face and back. The children remained with Adrian for about two months, but DCS removed them from his care in December 2010 and placed them in foster care after L.E. reported he had hit her with a belt on her stomach and back.

¶3        The children were adjudicated dependent as to Adrian in January 2011, after he admitted allegations in an amended dependency petition, and as to Crystal a few weeks later, after she failed to appear for the dependency hearing. The parents were provided a variety of services designed to reunify the family, and, in April 2012, the children were returned to Adrian's care. But the children were removed again in May 2012 and placed in foster care after L.E. reported Adrian had pulled her ear and I.E. stated Adrian had hit L.E. on the leg. In October 2012, DCS filed a motion to terminate the parents' rights on numerous grounds. On the last day of a five-day severance trial, the juvenile court denied the motion as to Crystal, and, then in a June 2013 under-advisement ruling, it denied the motion as to Adrian.

¶4        During the year that preceded the juvenile court's denial of the motion to sever, Crystal complied with the case plan, and, in May 2013, the children were placed in her care. Indeed, in its June 2013 under-advisement ruling, the court noted that the children had been "returned to the physical custody of their mother" and found that, "[b]ecause the children are permanently placed with their mother, . . . [there is] no benefit to terminating Father's parental rights." The court consolidated the dependency proceeding with the

---

[1] Crystal also appealed the termination of her rights. However, after appointed counsel filed an affidavit in compliance with Rule 106(G), Ariz. R. P. Juv. Ct., this court dismissed the appeal. *Crystal W. v. Dep't of Child Safety*, No. 2 CA-JV 2015-0072 (order filed July 23, 2015).

family-court action so that Adrian and Crystal could participate in mediation.

¶5          The parents entered into an updated parenting agreement in October 2013, which the family court adopted in its order in the family-law proceeding.  The agreement and, consequently, the court's order utilized principles and language consistent with 2012 amendments to title 25 that eliminated the terms "legal custody" and "visitation" and replaced them with "legal decision-making," § 25-401(3), and "parenting time,"  § 25-401(5).  *See* 2012 Ariz. Sess. Laws, ch. 309, §§ 4-5.  Crystal was given "sole legal decision-making" authority over the children.  The court granted Adrian parenting time as provided in the agreement, which gave him supervised parenting time at his expense and specified that the children were to live "primarily" with Crystal.  Based on the parties' agreement, the related order in the family-court matter, and Crystal's compliance with the case plan, the court dismissed the dependency proceeding on October 28.

¶6          In June 2014, L.E. and I.E. were removed from Crystal's care based on reports that she was neglecting and abusing them and that she was abusing alcohol and using drugs in front of them.  DCS filed a dependency petition, alleging as to Adrian that he had failed to protect the children from abuse or neglect by Crystal.  It further alleged Adrian had not exercised "his court-awarded supervised parenting time and was out of touch with the children," having failed to see them in five or six months.  Additionally, DCS alleged Adrian had a "life-long" history of mental-health issues.  A few months later, in August 2014, DCS filed a petition to terminate Crystal's and Adrian's parental rights to the children on one ground: prior removal under § 8-533(B)(11).  The juvenile court consolidated the severance and dependency proceedings.

¶7          Following contested dependency hearings in September and October 2014, the juvenile court adjudicated the children dependent as to both parents.  After contested severance hearings that began in November, the court granted DCS's petition in March 2015 and terminated the parents' rights pursuant to § 8-533(B)(11).  Adrian and the children separately appealed; we granted the request to consolidate the appeals.

4

**Discussion**

¶8          This case raises issues regarding the interpretation and application of § 8-533(B)(11) and related statutes, which are questions of law that we review de novo. *See In re John M.*, 201 Ariz. 424, ¶ 7, 36 P.3d 772, 774 (App. 2001); *see also Manuel M.*, 218 Ariz. 205, ¶ 18, 181 P.3d at 1131; *Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, ¶ 9, 158 P.3d 225, 228 (App. 2007). When interpreting statutes, this court must effectuate the legislature's intent and, because the language in a statute is the best reflection of that intent, we apply the statute as written unless its terms are not clear. *See Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, ¶ 8, 117 P.3d 795, 797 (App. 2005). "When a statute is clear and unambiguous, we apply its plain language and need not engage in any other means of statutory interpretation." *Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 14, 110 P.3d 1013, 1017 (2005).

¶9          To the extent a statute's language is ambiguous, "we attempt to determine the legislative intent by interpreting the statute as a whole, considering its place in the relevant statutory scheme, as well as the statute's 'subject matter, historical background, effects and consequences, and spirit and purpose.'" *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, ¶ 10, 344 P.3d 842, 845 (App. 2015), *quoting State ex rel. Montgomery v. Harris*, 234 Ariz. 343, ¶ 13, 322 P.3d 160, 162 (2014). We give the words of a statute "'their natural, obvious, and ordinary meaning.'" *Simpson v. Owens*, 207 Ariz. 261, ¶ 33, 85 P.3d 478, 489 (App. 2004), *quoting Arpaio v. Steinle*, 201 Ariz. 353, ¶ 5, 35 P.3d 114, 116 (App. 2001). "We also read . . . statutes in conjunction with each other and harmonize them whenever possible." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, ¶ 20, 282 P.3d 437, 441 (App. 2012). Finally, we will not interpret a statute in a manner that leads to an absurd result, even when the terms of the statute are clear and unambiguous. *See E.R.*, 237 Ariz. 56, ¶ 10, 344 P.3d at 845.

¶10          Section 8-533(B)(11) provides that the juvenile court may terminate parental rights when all of the following are true:

> (a)  The child was cared for in an out-of-home placement pursuant to court order.

(b) The agency responsible for the care of the child made diligent efforts to provide appropriate reunification services.

(c) The child, pursuant to court order, was returned to the legal custody of the parent from whom the child had been removed.

(d) Within eighteen months after the child was returned, pursuant to court order, the child was removed from that parent's legal custody, the child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency and the parent is currently unable to discharge parental responsibilities.

¶11 Section 8-531(5), A.R.S., defines the terms found in § 8-533 as follows:

"Custody" or "legal custody" means a status embodying all of the following rights and responsibilities:

(a) The right to have physical possession of the child.

(b) The right and the duty to protect, train and discipline the child.

(c) The responsibility to provide the child with adequate food, clothing, shelter, education and medical care, provided that such rights and responsibilities shall be exercised subject to the powers, rights, duties and responsibilities of the guardian of the person and subject to the residual parental rights and responsibilities if they

have not been terminated by judicial decree.

¶12 In its order terminating Adrian's parental rights, the juvenile court reviewed the history of the family's involvement with DCS. The court found that DCS had "made diligent efforts to provide appropriate reunification services," which it specified, and that, after the parties entered into an agreement, "the status of dependency no longer existed" and it "return[ed] legal and physical custody to [the] Mother." The court further found that the children were "removed . . . from [the] Mother eight months later." The court terminated both parents' rights based on these findings and the additional finding that termination of their rights was in the children's best interests.

¶13 Adrian and the children argue the children were not returned to his legal custody for purposes of § 8-533(B)(11) when the juvenile court dismissed the dependency in October 2013, nor were they therefore removed from Adrian's custody eight months later.[2] Adrian only had the right to supervised parenting time, which he was not exercising. Insisting the terms of § 8-533(B)(11) are clear, appellants assert "sole legal decision-making" is "legal custody" for purposes of § 8-533(B)(11) and only Crystal had legal custody.

¶14 DCS argued in its answering brief on appeal, however, that based on the definition in § 8-531(5), "legal custody" is not synonymous with "legal decision-making," defined in § 25-401(3), and parenting time, defined in § 25-401(5). DCS asserted the legislature intended that "legal decision-making" in the family-law context and "legal custody" for purposes of dependency and severance proceedings have different meanings. DCS reasoned this intent can be inferred from the fact that when the legislature amended title 25, it did not alter the language in title 8. DCS argued this intent can also be inferred from the fact that the legislature did

---

[2]The children acknowledge in their opening brief that they did not make this argument before the juvenile court. But, as they point out, Adrian raised it, thereby preserving the argument for appellate review.

not include dependency and severance proceedings among the circumstances it specified in § 25-401(3) in which "legal decision-making" means "legal custody."[3] But in the notice of concession of error DCS subsequently filed, it conceded the definition of legal custody in § 8-531(5) is not broad enough to include a parent such as Adrian, who was only granted supervised parenting time.

¶15 We agree with DCS's suggestion that § 8-533(B)(11) and § 8-531(5) are reasonably susceptible to different interpretations, particularly when considered together with the 2012 changes to title 25 and the corresponding language the parties used in their mediated agreement. *See* § 25-401(3); 2012 Ariz. Sess. Laws, ch. 309, §§ 4-5; 1997 Ariz. Sess. Laws, ch. 222, § 49. Section 8-533(B)(11) and § 8-531(5) clearly were intended to apply to a parent like Crystal, who had full-time physical custody and sole decision-making authority, even assuming the terms "custody" or "legal custody" are not synonymous with the related terms under title 25.[4] "'Sole legal decision-making' [authority] means one parent has the legal right and responsibility to make major decisions for a child." § 25-401(6). Crystal also had "the legal right and responsibility to make all nonemergency legal decisions for a child including those regarding education, health care, religious training and personal care decisions." § 25-401(3).

¶16 Additionally, Crystal's right to physical possession of the children was unrestricted, subject only to Adrian's highly restricted right to supervised parenting time for a total of four hours during the week, two hours each on Mondays and Tuesdays, "or on weekends if a professional supervisor [could be] obtained." Crystal

---

[3] After defining "legal decision-making," the statute states further: "For the purposes of interpreting or applying any international treaty, federal law, a uniform code or the statutes of other jurisdictions of the United States, legal decision-making means legal custody." § 25-401(3).

[4] Although Crystal is not a party to this appeal, we discuss the statutes as they apply to her because the discussion illustrates and supports our analysis regarding Adrian.

clearly had the right to "physical possession of the child[ren]," the right and the obligation to protect the children as well as to train and discipline them, and the responsibility to care for them by providing them with "adequate food, clothing, shelter, education and medical care." § 8-531(5).

¶17     DCS concedes Adrian's right to supervised parenting time cannot reasonably be construed to be the right to physical possession of his children for purposes of § 8-531(5). His right to "possession" was significantly restricted and existed only for the limited, designated hours, and when in the presence of a designated or otherwise accepted individual, at his expense. § 8-531(5)(a). Had Crystal and Adrian been given "[j]oint legal decision-making," they would have shared in the decisions pertaining to the children and "neither parent's rights or responsibilities" would have been "superior except with respect to specified decisions as set forth by the court or the parents in the final judgment or order." § 25-401(2). Perhaps then both could be viewed as having custody or legal custody as contemplated by § 8-533(B)(11). But the children were clearly placed with Crystal, and it would be unreasonable to interpret the statute to mean the children were also placed in Adrian's custody under these circumstances.

¶18     We agree with appellants that, based on its language and structure, § 8-533(B)(11) does not apply to Adrian. Rather, § 8-533(B)(11) was intended to serve as a basis for terminating the rights of the parent to whom a child had been returned during an initial dependency proceeding and from whom the child was again removed because of that parent's conduct. By using the term "that parent" in § 8-533(B)(11)(d), the legislature distinguished the parent whose rights may be terminated under the provision from another parent, one to whom the provision may not apply. The parent to whom a child previously was returned is therefore the same parent from whose "legal custody" the child has been removed a second time. Crystal is "that parent," not Adrian. There may be circumstances in which parents are a single unit, such as when they are living together in one household with the children. But that is not this case.

**¶19**        In addition, the legislature's use of the term "the parent" later in subsection (d) refers to "the parent for whom the ground exists." "[T]hat parent" and "the parent" are references to the same parent, the one to whom the child was returned and from whom the child was again removed. Whether we view the language of the statute in this regard as plain and clear or whether we find it ambiguous, interpreting this subsection to permit a court to terminate the rights of a father like Adrian, who had limited access to his children, based solely on the conduct of the other parent is an "absurd result[]." *E.R.*, 237 Ariz. 56, ¶ 10, 344 P.3d at 845.

**¶20**        Here, the juvenile court did not grant the severance petition as to Adrian based on findings related to him. Rather, it found Crystal had "obtained legal custody" in October 2013 and the children were "removed . . . from [her] eight months later." Removal of the children from Crystal's custody could not, therefore, be viewed as removal from Adrian's custody as well because as we previously concluded, he did not have "legal custody" for purposes of § 8-533(B)(11). The court did not err in finding Crystal had "legal custody" for purposes of § 8-533(B)(11). It did err, however, in concluding the findings as to Crystal were a sufficient basis for terminating Adrian's rights.

**¶21**        We recognize the public policy behind the 2010 and 2012 changes to title 25, which are reflected in the mediated agreement, was to encourage parents to work cooperatively, to share in the decision-making with respect to their children, and to spend "'substantial, frequent, meaningful and continuing parenting time'" with both parents. *Baker v. Meyer*, 237 Ariz. 112, ¶ 12, 346 P.3d 998, 1003 (App. 2015), *quoting* A.R.S. § 25-103(B); *see also* 2012 Ariz. Sess. Laws, ch. 309, §§ 5, 7-8; 2010 Ariz. Sess. Laws, ch. 221, § 1. We also acknowledge the legislature added § 8-533(B)(11) as part of its efforts to expedite termination proceedings so that children will "spend less time in foster care" and be placed in "permanent homes sooner." Senate Fact Sheet, H.B. 2255, 43rd Leg., 1st Reg. Sess. (Ariz. May 15, 1997). But we do not believe the legislature intended to permit courts to terminate one parent's rights on a ground that does not apply to that parent but instead applies to the other parent and relates to that other parent's conduct. We therefore decline to

interpret the severance statute to permit Adrian's rights to be terminated based on Crystal's status and her conduct. Such an interpretation would violate a parent's due process rights. *See Frank R. v. Mother Goose Adoptions*, No. 2 CA-JV 2015-0120, ¶¶ 26-27, 2016 WL 531652 (Ariz. Ct. App. Feb. 10, 2016). It is our obligation to attempt to construe and apply statutes in a manner that would render them constitutional. *Blake v. Schwartz*, 202 Ariz. 120, ¶ 27, 42 P.3d 6, 12 (App. 2002). We have done so here.

**Disposition**

**¶22**        Because we conclude the juvenile court erred in terminating Adrian's parental rights pursuant to § 8-533(B)(11), we need not address appellants' argument in their separate briefs that the court abused its discretion by finding termination of Adrian's parental rights was in the children's best interests. For the reasons stated, we reverse the court's order.