IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

―――――――――――――

KIMBERLY MCLAUGHLIN,
*Petitioner*,

*v.*

HON. LORI B. JONES, JUDGE PRO TEMPORE OF THE SUPERIOR COURT
OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PIMA,
*Respondent*,

*and*

SUZAN MCLAUGHLIN,
*Real Party in Interest*.

No. 2 CA-SA 2016-0035
Filed October 11, 2016

―――――――――――――

Special Action Proceeding
Pima County Cause No. DC20130015

**JURISDICTION ACCEPTED; RELIEF DENIED**

―――――――――――――

COUNSEL

Berkshire Law Office, PLLC, Phoenix
By Keith Berkshire and Megan Lankford
*Counsel for Petitioner*

Campbell Law Group, Chartered, Phoenix
By Claudia D. Work
National Center for Lesbian Rights, San Francisco, California
By Catherine Sakimura, Shannon Minter, and Emily Haan
*Co-Counsel for Real Party in Interest*

Family and Juvenile Law Certificate Program, Tucson
By Barbara A. Atwood

Child and Family Law Clinic, Tucson
By Paul D. Bennett, a clinical professor appearing pursuant to Rule 38(d), Ariz. R. Sup. Ct., and Autumn Kycia, a student certified pursuant to Rule 38(d)

Community Law Group, Tucson
By Negar Katirai, an assistant clinical professor appearing pursuant to Rule 38(d), Ariz. R. Sup. Ct.
*Counsel for Amicus Curiae Child and Family Law Clinic, The University of Arizona Rogers College of Law*

---

## OPINION

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Howard and Judge Staring concurred.

---

E S P I N O S A, Judge:

¶1    In *Obergefell v. Hodges*, ___ U.S. ___, ___, 135 S. Ct. 2584, 2604-05 (2015), the United States Supreme Court held "same-sex couples may exercise the fundamental right to marry."  In this special action, we are asked to decide whether, in light of that decision, the respondent judge erred by finding real-party-in-interest Suzan McLaughlin, the female spouse of petitioner Kimberly McLaughlin, is the presumptive parent of the child born to Kimberly, pursuant to A.R.S. § 25-814(A)(1), and finding Kimberly may not rebut that presumption pursuant to § 25-814(C).  For the reasons that follow, we accept jurisdiction and deny relief.

**Factual and Procedural Background**

¶2    Kimberly and Suzan were legally married in October 2008 in California.  The couple agreed to have a child through artificial insemination, using an anonymous sperm donor selected

from a sperm bank. Although efforts to have Suzan conceive and give birth through this process did not prove successful, Kimberly became pregnant in 2010. Before the child was born, the couple moved to Arizona. Anticipating the birth, they entered into a joint parenting agreement and executed mirror wills, declaring they were to be equal parents of the child Kimberly was carrying.[1] After E.'s birth in June 2011, Suzan stayed at home and cared for him, while Kimberly worked as a physician. The relationship deteriorated, however, and when E. was almost two years old, Kimberly moved out of the home, taking E. with her and cutting off his contact with Suzan.

¶3        Suzan filed a Petition for Dissolution of Marriage in April 2013, as well as a Petition for Legal Decision-Making and Parenting Time In Loco Parentis and Petition for Temporary Orders. The respondent judge subsequently stayed the proceedings while *Obergefell* was pending before the Supreme Court. In January 2016, six months after the Court decided *Obergefell*, holding same-sex couples have the same fundamental right to marry as heterosexual couples, ___ U.S. at ___, 135 S. Ct. at 2602-03, Kimberly moved to set the case for trial. The respondent ordered briefing concerning the issue whether the case was a dissolution proceeding with or without children in view of the presumption of paternity set forth in § 25-814(A). The respondent subsequently found in her April 7, 2016 minute entry that, based on *Obergefell*, it would violate Suzan's rights under the Fourteenth Amendment not to apply to her the same presumption of parenthood that applies to a man. The

_____

[1]The agreement stated the parties' intent that Suzan would "participate in a second parent adoption of the child if and when the parties reside in a jurisdiction that permits second parent adoptions," and Suzan would be a "co-parent" of the child; Kimberly "waive[d] any constitutional, federal or state laws that provide her with a greater right to custody and visitation than that enjoyed by Suzan," and the parties further agreed, "[s]hould the relationship between [them] . . . end before a second parent adoption can take place," the parent-child relationship between Suzan and the child would "continue with shared custody . . . ."

respondent thus ordered that the case proceed as a dissolution action with children.

¶4        Kimberly then filed a Motion for Declaratory Judgment, asking the respondent judge to decide whether she would be permitted to rebut the presumption pursuant to § 25-814(C).  In her May 2 order, the respondent ruled that Kimberly would not be permitted to rebut the presumption.  The respondent reasoned that because Suzan was not basing her parenthood on a presumption of paternity, it was not an issue in the case and there was nothing for Kimberly to rebut under the statute.  The respondent added, a "family presumption applies to same sex and opposite sex non-biological spouses married to a spouse who conceived a child during the marriage via artificial insemination."  The respondent also relied on A.R.S. § 25-501, a support statute applicable when a child is born as a result of artificial insemination, finding it necessarily gives rise to parental rights in the non-biological spouse. The respondent again ruled the case would proceed as a dissolution action with children.  This special action followed.

**Jurisdiction**

¶5        This court has discretion whether to accept special-action jurisdiction. *Lincoln v. Holt*, 215 Ariz. 21, ¶ 3, 156 P.3d 438, 440 (App. 2007).  In determining whether to exercise that discretion, we consider whether the petitioner has an equally plain, speedy, and adequate remedy by appeal.  Ariz. R. P. Spec. Act. 1(a). Additionally, questions of law regarding the interpretation of a statute are particularly suited for special-action review, as are issues of first impression and statewide importance.  *See State v. Bernini*, 230 Ariz. 223, ¶ 5, 282 P.3d 424, 426 (App. 2012).

¶6        The respondent judge's ruling could be challenged on appeal, after the case has been decided and a final decree and parenting order is entered.  *See* Ariz. R. Fam. L. P. 78; *Antonsen v. Superior Court*, 186 Ariz. 1, 4, 918 P.2d 203, 206 (App. 1996) (acknowledging order regarding paternity testing could be raised on direct appeal from final custody order but finding it in child's best interest to accept special-action jurisdiction and address legal issue). But this case raises significant legal questions of first impression and

statewide importance regarding the interpretation and implications of *Obergefell*, and it involves a young child, whose best interest is at stake, compelling reasons to decide these matters now. *See Alvarado v. Thompson*, 240 Ariz. 12, ¶ 10, 375 P.3d 77, 79 (App. 2016); *see also Sheets v. Mead*, 238 Ariz. 55, ¶ 6, 356 P.3d 341, 342–43 (App. 2015) (accepting special-action jurisdiction in part because child would face prolonged period of uncertainty while appeal pending); *K.D. v. Hoffman*, 238 Ariz. 278, ¶ 4, 359 P.3d 1022, 1023 (App. 2015) (special-action jurisdiction accepted in part because issues involved welfare of child).

¶7        For all of these reasons, we accept jurisdiction of this special action.

**Discussion**

¶8        Kimberly does not dispute that she and Suzan agreed Kimberly would be artificially inseminated, they would both be the child's parents, and they would have equal parental rights. She nevertheless contends Suzan is not a parent as that term is defined in A.R.S. § 25-401(4). She argues that as E.'s biological mother, she is, by definition, the only parent and therefore the only person who has parental rights, which are fundamental rights. Kimberly asserts the respondent judge thus erred by construing § 25-501(B) and § 25-814(A)(1) to give Suzan the same parental rights as she possesses. Suzan responds that in light of *Obergefell*, those statutes must be applied and interpreted in a gender-neutral manner so that same-sex couples' fundamental marital rights are not restricted and they are afforded the same benefits of marriage as heterosexual couples and on the same terms. *Obergefell*, ___ U.S. at ___, 135 S. Ct. at 2604.

¶9        The interpretation and application of statutes involve questions of law, which we review de novo. *See Adrian E. v. Dep't of Child Safety*, 239 Ariz. 240, ¶ 8, 369 P.3d 264, 266 (App. 2016). "Our primary task in interpreting statutes is to give effect to the intent of the legislature." *State v. Lee*, 236 Ariz. 377, ¶ 16, 340 P.3d 1085, 1090 (App. 2014), *quoting In re Estate of Winn*, 214 Ariz. 149, ¶ 8, 150 P.3d 236, 238 (2007). The plain language of a statute is the best indicator of that intent. *Id.* Therefore, "[w]hen a statute is clear and unambiguous, we apply its plain language and need not engage in

any other means of statutory interpretation." *Kent K. v. Bobby M.*, 210 Ariz. 279, ¶ 14, 110 P.3d 1013, 1017 (2005). But we must also "attempt to construe and apply statutes in a manner that would render them constitutional." *Adrian E.*, 239 Ariz. 240, ¶ 21, 369 P.3d at 269; *see also Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 272-73, 872 P.2d 668, 676-77 (1994) ("[I]f possible, this court construes statutes to avoid rendering them unconstitutional.").

**¶10**        Section 25-401(4) defines "legal parent" for purposes of marital dissolution proceedings under Title 25, as the "biological or adoptive parent."[2] The statute adds, "Legal parent does not include a person whose paternity has not been established pursuant to [A.R.S.] § 25-812 [acknowledgment of paternity] or 25-814 [presumptions of paternity]." Thus, "legal parent" includes a person whose paternity is established under § 25-814.

**¶11**        Section 25-814(A) provides, in relevant part, as follows:

> A. A man is presumed to be the father of the child if:
>
> 1. He and the mother of the child were married at any time in the ten months immediately preceding the birth . . . .
>
> 2. Genetic testing affirms at least a ninety-five per cent probability of paternity.
>
> 3. A birth certificate is signed by the mother and father of a child born out of wedlock.

---

[2] Although Kimberly also refers to a similar definition of parent in A.R.S. § 1-602(E), which is part of Arizona's Parents' Bill of Rights, A.R.S. §§ 1-601 to 1-602, we confine our discussion to the issue before us, which is whether Suzan is a parent for purposes of a marital dissolution proceeding under Title 25 and the definition of parent in § 25-401(4).

> 4. A notarized or witnessed statement is signed by both parents acknowledging paternity or separate substantially similar notarized or witnessed statements are signed by both parents acknowledging paternity.

Enacted well before the Supreme Court decided *Obergefell*, this statute was written with gender-specific language at a time when the marriage referred to in subsection (A)(1) could only be between a man and a woman.[3] *See* Ariz. Const. art. XXX, § 1 (only union of one man and one woman valid or recognized as marriage); A.R.S. § 25-101(C) (prohibiting marriage between persons of same sex).

**¶12**     Kimberly first contends the respondent judge erred by relying on § 25-501 to imply a "family presumption" in § 25-814. We agree. Section 25-501 is a support statute; it requires the spouse of a woman who bears a child as a result of artificial insemination to pay child support when that spouse is the biological parent or agreed to the insemination in writing. § 25-501(B). The plain language of the statute does not create "legal parent" status in a person who agreed to the insemination or give that person parental rights. Had the legislature intended to confer those rights, it could have done so when it enacted § 25-401(4) and defined "legal parent." *See* 2012 Ariz. Sess. Laws, ch. 309, § 4.[4] We disagree with Kimberly, however,

---

[3] Initially enacted as A.R.S. § 12-854 in 1994 as part of comprehensive child-support legislation, the legislature renumbered the statute as § 25-814 in 1996. *See* 1994 Ariz. Sess. Laws, ch. 374, § 5; 1996 Ariz. Sess. Laws, ch. 192, § 14.

[4] Other states have specifically addressed parentage in the context of assisted reproduction and have adopted the Uniform Parentage Act (UPA), which recognizes a parent-child relationship under those circumstances. *See* Unif. Parentage Act §§ 703, 704 (Unif. Law Comm'n 2002). Although our courts have found the policies of the UPA "persuasive," *Hall v. Lalli*, 194 Ariz. 54, ¶ 22, 977 P.2d 776, 783 (1999), our legislature has not adopted it, *see Stephenson*

that it would be impossible and absurd to apply § 25-814(A)(1) in a gender-neutral manner to give rise to presumptive parenthood in Suzan. Indeed, *Obergefell* mandates that we do so and the plain language of the statute, as well as the purpose and policy behind it, are not in conflict with that application.

**¶13** In *Obergefell*, the Supreme Court held that state statutes that do not permit and will not recognize same-sex marriages deny same-sex couples the liberty-based, fundamental right to marry, thereby violating the Due Process and Equal Protection Clauses of the Constitution. ___ U.S. at ___, ___, 135 S. Ct. at 2602-03, 2604-05. The Court expressly stated that same-sex couples "may not be deprived" of the fundamental right to marry and state laws that "exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples" are invalid. *Id.* at ___, 135 S. Ct. at 2604-05. Relying, in part, on its previous decision in *Zablocki v. Redhail*, 434 U.S. 374, 384, 386 (1987), in which it had reaffirmed the holding in *Loving v. Virginia*, 388 U.S. 1, 12 (1967), that the right to marry is fundamental, the Court identified liberty-based, constitutionally protected rights that are related to the right to marry, including the right to procreate, raise children and make decisions relating to family relationships. *Obergefell*, ___ U.S. at ___, 135 S. Ct. at 2598-600.[5]

**¶14** Under § 25-814(A)(1), the male spouse of a woman who delivers a child is the presumptive parent, and, therefore, a "legal parent" for purposes of § 25-401(4). If the female spouse of the birth mother of a child born to a same-sex couple is not afforded the same presumption of parenthood as a husband in a heterosexual

---

*v. Nastro*, 192 Ariz. 475, ¶ 16, 967 P.2d 616, 621-22 (App. 1998), and it is not for us to do so.

[5]In *Obergefell*, the Court also held "there is no lawful basis for a State to refuse to recognize a lawful same-sex marriage performed in another State on the ground of its same-sex character." ___ U.S. at ___, 135 S. Ct. at 2607-08. Kimberly and Suzan were legally married in California in 2008. Following *Obergefell*, Arizona must recognize their marriage.

marriage, then the same-sex couple is effectively deprived of "civil marriage on the same terms and conditions as opposite-sex couples," particularly in terms of "safeguard[ing] children and families." *Obergefell*, ___ U.S. at ___, ___, 135 S. Ct. at 2600, 2605.[6] We therefore must reject Kimberly's rigid interpretation of § 25-814. Mindful of our obligation to find statutes constitutional if possible, *Adrian E.*, 239 Ariz. 240, ¶ 21, 369 P.3d at 269, and given the language and purpose of § 25-814, we find it accommodates a gender-neutral application and *Obergefell* requires us to apply it in this manner.

¶15 Notwithstanding the use of male-specific terms such as "man," "paternity" and "father," a man's paternity under the statute and, therefore, his status as a legal parent under § 25-401(4) is not necessarily biologically based. Indeed, of the four circumstances specified in § 25-814(A) that give rise to the presumption of paternity, only subsection (A)(2) is based on the establishment of a biological connection between the man and the child through scientific testing. Section 25-814(A)(1) presumes paternity if the child is born during the marriage or within ten months thereafter. It does not require a biological connection between the father and child. The mere fact that the child was born during the marriage or shortly thereafter gives rise to the presumption of the husband's paternity, without regard to whether the husband is the biological parent. Similarly, neither subsection (A)(3), the father's signature on the birth certificate, nor (A)(4), acknowledgment of paternity, requires a biological link with the child. Both are based, instead, on

---

[6] That Arizona's adoption statutes, post-*Obergefell*, permit same-sex couples to adopt a child, and allow a birth mother's female spouse to adopt her child, does not place same-sex and heterosexual couples on equal footing. *See* A.R.S. § 8-103(A) (defining who may adopt a child in Arizona); A.R.S. § 8-117(C) (effect of adoption order when spouse of parent adopts); Ariz. R. P. Juv. Ct. 79 (setting forth procedures for adoption, including mandatory content of petition). Aside from the fact that adoption of E. was not a viable option for Suzan in Arizona before *Obergefell*, the adoption process is not comparable to presumptive parenthood based on marriage.

the presumed father's declared intent to be the child's parent and thereby assume the responsibility of supporting the child.

¶16        The word "paternity" therefore signifies more than biologically established paternity.  It encompasses the notion of parenthood, including parenthood voluntarily established without regard to biology.  As our supreme court observed decades ago, the purpose of paternity statutes "appears to be to provide financial support for the child from the natural parent."  *Hurt v. Superior Court*, 124 Ariz. 45, 48, 601 P.2d 1329, 1332 (1979).  Indeed, initially enacted as A.R.S. § 12-854 in 1994, the statute was part of sweeping changes to Arizona's child support statutes.  *See* 1994 Ariz. Sess. Laws, ch. 374, § 5; 1996 Ariz. Sess. Laws, ch. 192, § 14 (renumbered as § 25-814).  The marital presumption is intended to assure that two parents will be required to provide support for a child born during the marriage.  *See* A.R.S. § 25-503(A), (F) (requiring presumed parent under § 25-814(A) to pay child support unless clear and convincing evidence shows "paternity was established by fraud, duress or material mistake of fact").

¶17        The marital presumption of paternity serves the additional purpose of preserving the family unit.  *See Ban v. Quigley*, 168 Ariz. 196, 199, 812 P.2d 1014, 1017 (App. 1990); *see also Partanen v. Gallagher*, ___ N.E.3d ___, ___, SJC-12018, 2016 WL 5721061, at *7 (Mass. Oct. 4, 2016) (finding that presumptions of paternity "'are driven, not by biological paternity, but by the [S]tate's interest in the welfare of the child and the integrity of the family'"), *quoting In re Guardianship of Madelyn B.*, 98 A.3d 494, 500 (N.H. 2014)( alteration in *Partanen*); *CW v. LV*, 788 A.2d 1002, 1005 (Pa. Super. Ct. 2001) (public policy behind presumption of paternity is preservation of families).  These purposes and policies are equally served whether the child is born during the marriage of a heterosexual couple or to a couple of the same sex.  *See Obergefell*, ___ U.S. at ___, 135 S. Ct. at 2600 (safeguarding children and families, which is among bases for protecting right to marriage, applies equally to same-sex as opposite-sex couples).[7]

---

[7]Section 25-103(B), A.R.S., provides:  "It . . . is the declared public policy of this state and the general purpose of this title that

¶18　　　Kimberly maintains that § 25-814 pertains to paternity and fatherhood, and is a "biological paternity statute" that cannot apply to Suzan because she cannot possibly be E.'s father and has no biological connection to him. And, she argues, it is constitutionally permissible to treat men and women differently in this context, based on biological distinctions, relying on *Nguyen v. I.N.S.*, 533 U.S. 53 (2001). There, the Court found constitutional a federal statute that determines the citizenship of a child born out of the country and out of wedlock differently if the mother is a citizen than if the purported father is a citizen. *Id.* at 70-71. The Court concluded the gender-based classification had a biological basis and the government has an important interest in verifying that a biological parent-child relationship exists before a child born out of the country and out of wedlock may be regarded as an American citizen. *Id.* at 71-72. No such reasons for treating men and women differently exist here, where the issue is parenthood of a child born during a marriage.

¶19　　　The respondent judge thus correctly found that Suzan is presumptively E.'s parent. She erred, however, when she concluded that only a presumption of paternity is rebuttable under § 25-814(C). *See* § 25-814(C) ("Any presumption under [§ 25-814(A)] shall be rebutted by clear and convincing evidence."). By doing so, the respondent applied portions of § 25-814 in a gender-neutral manner but not others. The marital presumption of parenthood cannot constitutionally be rebuttable when the presumed parent is a man, the husband in a heterosexual marriage, but not when the spouse of the birth mother is a woman. *Cf. Soos v. Superior Court*, 182 Ariz. 470, 474-75, 897 P.2d 1356, 1360-61 (App. 1994) (finding A.R.S. § 25-218, which prohibits surrogate parentage contracts, violated equal protection principles insofar as it allowed men to rebut presumption

---

. . . it is in a child's best interest: 1. To have substantial, frequent, meaningful and continuing parenting time with both parents[;] 2. To have both parents participate in decision-making about the child." Subsection (C) of the statute further provides: "A court shall apply the provisions of [Title 25] in a manner that is consistent with this section."

of paternity but did not permit a woman, whose egg had been implanted in the surrogate, to rebut the presumption of maternity).

¶20        Here, however, we need not decide how the rebuttal provision in § 25-814(C) applies in a same-sex marriage because we determine Kimberly is estopped from rebutting the presumption. *See Calderon-Palomino v. Nichols*, 201 Ariz. 419, ¶ 3, 36 P.3d 767, 769 (App. 2001) (appellate court will not grant special-action relief if respondent reaches right result for wrong reason). Equitable estoppel applies when a party engages in acts inconsistent with a position later adopted and the other party justifiably relies on those acts, resulting in injury. *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, ¶ 28, 156 P.3d 1149, 1155 (App. 2007).

¶21        The parties do not dispute that they were lawfully married when Kimberly became pregnant as a result of artificial insemination the parties agreed should be undertaken, and E. was born. Nor does Kimberly dispute that Suzan stayed home to care for E. during the first two years of his life, until Kimberly left the home with him. Additionally, Kimberly and Suzan entered into an express agreement contemplating E.'s birth and agreed unequivocally that both would be E.'s parents, with equal rights in every respect. In fact, Kimberly specifically "waive[d] any constitutional, federal or state laws that provide her with a greater right to custody and visitation than that enjoyed by Suzan." The parties even agreed that, "[s]hould the relationship between [them] end before a second parent adoption can take place," the parent-child relationship between Suzan and the child would "continue with shared custody . . . ." Finally, the couple agreed Suzan would "participate in a second parent adoption of the child if and when the parties reside in a jurisdiction that permits second parent adoptions," but Kimberly left the home and separated from Suzan before *Obergefell* was decided and adoption was possible.

¶22        The doctrine of equitable estoppel is not a stranger to family law jurisprudence in Arizona. *See Fenn v. Fenn*, 174 Ariz. 84, 89-90, 847 P.2d 129, 134-35 (App. 1993) (fundamental estoppel elements of representation and detrimental reliance considered in determining child support obligations, though ultimately not relied upon); *see also Unruh v. Indus. Comm'n*, 81 Ariz. 118, 120, 301 P.2d

1029, 1031 (1956) (rejecting dissolution litigant's claim where "conscience of the court" repelled by assertion of rights inconsistent with litigant's past conduct). Although no Arizona case has, until now, addressed a situation such as the one before us, we find helpful and persuasive a Wisconsin decision, *Randy A.J. v. Norma I.J.*, 677 N.W.2d 630 (Wis. 2004).

¶23　　In that case, the Wisconsin Supreme Court found the biological mother of a child born during her marriage and the child's putative father equitably estopped from rebutting the statutory presumption that the mother's husband was the child's father. *Id.* at 640-41. The husband, who had no idea another man could be the child's biological father, had supported the child and acted as her father in every respect for years before the mother was convicted of embezzlement and incarcerated, and divorce proceedings began. *Id.* at 633-34. During those proceedings, the mother questioned her husband's paternity for the first time and the putative father then filed a paternity action. *Id.* at 634.

¶24　　The Wisconsin court identified the issue as "whether the actions and inactions of [the mother] and [the putative father] were so unfair as to preclude them from overcoming the public's interest in the marital presumption" under the Wisconsin statute, which is similar to § 25-814(A)(1). *Id.* at 640-41. The court concluded that all elements of equitable estoppel existed: action or inaction that induces reliance by another to that person's detriment. *Id.* It noted the arguments of the child and the father that the "uncontradicted evidence" showed the mother and the putative father had done nothing to assert his paternity, had permitted the husband to pay all birthing expenses and meet her financial needs, even after genetic testing, and had allowed the husband and the child "to develop deep emotional ties with each other." *Id.* at 641. It noted the following additional factors: "breaking those ties would be very harmful to [the child], as [the husband] is the only father she has ever known," and, the husband was "fully committed" to acting as the child's father and had done so throughout her life, providing for her emotional and financial needs for six years. *Id.* "In contrast," the court observed, the mother and the putative father had "asserted nothing" but biological test results and the resulting presumption of

paternity to counter the arguments of the child and the father and the trial court's findings, which included a determination that it was in the child's best interest to adjudicate the husband as the child's father. *Id.*

¶25 The Wisconsin court also concluded that the mother and putative father's "actions and lack of action, which were relied on by both [the child] and [the husband], [were] so unfair, that when combined with the state's interest in preserving [the child's] status as a marital child, they outbalance the public's interest in a purely biological approach to parenthood." *Id.* The court found them "equitably estopped from rebutting the marital presumption" establishing the husband's paternity of the child. *Id.*

¶26 Other courts have applied the principle of equitable estoppel in the same manner under similar circumstances. *See Van Weelde v. Van Weelde*, 110 So. 3d 918, 921-22 (Fla. Dist. Ct. App. 2013) (wife equitably estopped from challenging husband's status as legal father, given his name on birth certificate, mutual written acknowledgment of paternity, husband held child out as his own, and provided care and support); *Hinshaw v. Hinshaw*, 237 S.W.3d 170, 172-73 (Ky. 2007) (wife in custody dispute precluded from using genetic test results to show husband who believed he was father of child born during marriage was not biological father); *S.R.D. v. T.L.B.*, 174 S.W.3d 502, 510 (Ky. Ct. App. 2005) (in post-dissolution action, husband estopped from disclaiming paternity and financial obligations to children born during marriage and treated as own for years); *Riddle v. Riddle*, 619 N.E.2d 1201, 1204, 1211-12 (Ohio Ct. Com. Pl. 1992) (mother estopped from challenging husband's paternity of child born during marriage after she had permitted him to believe he was father and he had relied on that representation); *Clark v. Edens*, 254 P.3d 672, ¶¶ 15-16 (Okla. 2011) (same); *Pettinato v. Pettinato*, 582 A.2d 909, 912-13 (R.I. 1990) (same).

¶27 The reasoning of these cases applies equally here, compelling us to reach the same conclusion. Suzan entered into an agreement that guaranteed her equal parental rights with Kimberly. And by agreeing to Kimberly's artificial insemination, she thereby bound herself under § 25-501 to provide support for E. It is of no moment that during oral argument before this court, Kimberly

stated she would not be seeking to enforce Suzan's support obligation, since the duty is owed to E. Significantly, Suzan executed a will designating Kimberly and E. as beneficiaries, stayed home and cared for E. for the first two years of his life, and was his de facto parent. In addition, there is no other person asserting presumptive parentage of E. and expressing a willingness to care for and support him. *Cf. In re Marriage of Worcester*, 192 Ariz. 24, ¶ 7, 960 P.2d 624, 627 (1998) (stating, "we find no suggestion in the statutes that the court must or may permit the presumption [of parenthood] to be rebutted unless the mother is seeking child support from another"). Suzan is the only parent other than Kimberly, and having two parents to love and support E. is in his best interest. Under these circumstances, Kimberly is estopped from rebutting the presumption of parenthood pursuant to § 25-814(C).

**Conclusion**

¶28 Albeit for the different reasons discussed in this opinion, the respondent judge correctly found Suzan to be E.'s legal parent and ordered this matter to proceed as a dissolution action with children. Accordingly, Kimberly's petition for special-action relief is denied. Both parties have requested an award of attorney fees pursuant to A.R.S. § 25-324 which, based on the limited record in this regard, we deny. As the prevailing party in this special action, however, Suzan is granted her taxable costs upon compliance with Rule 21, Ariz. R. Civ. App. P. *See* Ariz. R. P. Spec. Act. 4(g).