I
NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO F.G.

No. 1 CA-JV 25-0120

FILED 02-27-2026

---

Appeal from the Superior Court in Maricopa County
No. JD34665, JS22647
The Honorable Adele Ponce, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Seth Draper
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Tucson
By Marika J. Hodge
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Andrew J. Becke delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**B E C K E**, Judge:

¶1        Monica G. ("Mother") appeals a July 2025 order terminating her parental rights as to F.G.[1] For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        F.G. was born in January 2022. This appeal arises out of the third dependency for F.G.

### I.        First Dependency

¶3        In February 2022, the Department of Child Safety ("DCS") was informed that Mother was seen falling multiple times while pushing F.G. in a stroller. During one fall, the weeks-old child "roll[ed] out" of the stroller and was taken to the hospital. Mother was so intoxicated that no information could be gathered from her, and a bottle of alcohol was found in the stroller.

¶4        DCS took F.G. into care by court order and filed a dependency petition, alleging Mother was unwilling or unable to parent F.G. due to substance abuse. Mother did not contest the petition, and in April 2022, the court found F.G. dependent, adopting a family reunification case plan. Mother then actively, and apparently successfully, participated in services DCS provided.

¶5        In April 2023, on DCS's motion, F.G. was placed back in Mother's physical custody. In June 2023, on DCS's motion, the court dismissed the dependency. That apparent success, however, did not last long.

### II.        Second Dependency

¶6        In October 2023, Mother was seen stumbling and pushing F.G. in a stroller into oncoming traffic. Police found a nearly empty bottle of alcohol and a baby bottle containing alcohol in the stroller. Mother and F.G. were taken to a hospital, where Mother appeared to be intoxicated and had a blood alcohol content of 0.395.

---

[1] The superior court also terminated father's parental rights as to F.G., but he is not a party to this appeal.

¶7            DCS again took F.G. into care by court order and filed the second dependency petition, alleging Mother was unwilling or unable to parent F.G. due to substance abuse. Mother again did not contest the petition, and in December 2023, the court again found F.G. dependent, adopting a family reunification case plan. As with the first dependency, Mother then actively, and apparently successfully, participated in services DCS provided.

¶8            In October 2024, Mother moved to have F.G. returned to her physical custody, to which DCS did not object. The court granted the motion, and F.G. was again placed with Mother.

¶9            In January 2025, DCS moved to dismiss the dependency, noting that it had provided Mother "with every service and tool offered in hopes she is able to maintain [sobriety] on her own without court oversight." On January 15, 2025, the court dismissed the second dependency and, in doing so, found that DCS had made reasonable efforts to finalize the family reunification plan.

## III.    Third Dependency

¶10            Just weeks later, on February 3, 2025, DCS received a report that Mother was intoxicated—described as "staggering" and "stumbling"—at her transitional residence. Residence staff took Mother's car keys because she intended to drive to F.G.'s daycare to pick F.G. up. A breathalyzer test showed Mother had a blood alcohol content of 0.205. DCS removed F.G. from Mother's custody.

¶11            DCS then filed a third dependency petition, alleging Mother was unwilling or unable to parent F.G. because of substance abuse. This time, Mother contested the dependency allegations.

¶12            Later in February 2025, DCS filed a petition to terminate Mother's parental rights based on (1) substance abuse, and (2) F.G.'s placement in out-of-home care pursuant to court order and that, within 18 months after being returned to Mother, the child had again been removed from Mother's care. *See* A.R.S. § 8-533(B)(3), (11). The petition to terminate alleged that Mother had demonstrated an inability to manage her substance abuse despite being offered services to maintain sobriety. DCS reported providing Mother extensive rehabilitative services, including individual counseling, parenting classes, substance abuse treatment, transportation, urinalysis testing, and visitation.

¶13        In May 2025, the superior court held a combined contested dependency and termination adjudication hearing. After hearing testimony from several witnesses (including Mother) and receiving exhibits, the court found F.G. dependent due to Mother's inability to parent because of ongoing alcohol abuse. The court found that Mother's "longstanding alcohol abuse problem" had resulted in F.G.'s repeated removal from Mother's care, as well as the removal of Mother's other children not involved in this case. The court further noted that F.G. had been removed from Mother's care due to alcohol abuse just as the second dependency was being dismissed.

¶14        The court granted DCS's petition for termination, finding by clear and convincing evidence that Mother's prolonged substance abuse and F.G.'s prior removal constituted grounds for termination of Mother's parental rights. *See* A.R.S. § 8-533(B)(3), (11). The court found by a preponderance of evidence that termination was in F.G.'s best interests.

¶15        Mother timely appealed. We have jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

¶16        Mother argues that the superior court erred by: (1) relying on DCS's efforts from the first and second dependencies to satisfy the diligent efforts requirement of the third dependency, and (2) finding *sua sponte* it was futile to offer Mother further rehabilitation services.

¶17        To support a termination order, the court must find (1) a ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence, and (2) that termination is in the child's best interests by a preponderance of evidence. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). In reviewing the court's termination order, we accept the court's factual findings if reasonable evidence and inferences support them and affirm the court's legal conclusions about the statutory grounds for the termination unless clearly erroneous. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023).

4

I. **The Superior Court Properly Considered Reunification Services Provided During Previous Dependencies in Assessing Whether DCS Complied with Its Duty to Provide Services.**

¶18 Mother argues the superior court erred by relying on the reunification services provided in the first and second dependencies to conclude the elements of A.R.S. § 8-533(B)(11) were met in the third dependency. We disagree.

¶19 Under § 8-533(B)(11), termination is permitted when the court finds by clear and convincing evidence that all of the following are true:

> (a) The child was cared for in an out-of-home placement pursuant to court order[;]
> (b) The agency responsible for the care of the child made diligent efforts to provide appropriate reunification services[;]
> (c) The child, pursuant to court order, was returned to the legal custody of the parent from whom the child had been removed[; and]
> (d) Within eighteen months after the child was returned, pursuant to court order, the child was removed from that parent's legal custody, the child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency and the parent is currently unable to discharge parental responsibilities.

¶20 Mother contests the superior court's findings only on the second element, whether DCS "made diligent efforts to provide appropriate reunification services." § 8-533(B)(11)(b). She argues that a court cannot rely on reunification services provided in a prior dependency to meet the diligent efforts requirement in a current dependency. Not so.

¶21 In interpreting statutes, we "read each word, phrase, clause, and sentence in a manner that ensures 'no part of the statute is void or trivial' and will give meaning to the statute's clear and unequivocal language." *In re B.W.*, __ Ariz. __, ¶ 16, 572 P.3d 88, 94 (2025) (quoting *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142, ¶ 15 (2024)). "Under this plain meaning analysis, we look first to the language of the provision, for if the statutory language is clear, judicial construction is neither required nor proper." *Id.* (citations omitted and cleaned up).

**¶22** Section 8-533(B)(11) plainly describes a temporal sequence. First, the child must be in an out-of-home placement pursuant to a court order. § 8-533(B)(11)(a). Second, (once the child is in an out-of-home placement) DCS must provide reunification services. § 8-533(B)(11)(b). Third, (once the reunification services have been provided) the child must have been returned to the legal custody of the parent. § 8-533(B)(11)(c). And finally, (once the child has been returned to the parent's legal custody) within 18 months of the child's return, the child is again removed from the parent's legal custody, is cared for in an out-of-home placement, and the parent is then unable to discharge parental responsibilities. § 8-533(B)(11)(d). When each of these elements have been met by clear and convincing evidence, grounds exist for termination.

**¶23** Previous memorandum decisions from this Court have uniformly concluded the superior court is entitled to rely on reunification services provided in an earlier dependency to satisfy § 8-533(B)(11)(b)'s requirement that DCS "made diligent efforts to provide appropriate reunification services." *E.g.*, *In re M.B.*, 1 CA-JV 23-0214, 2024 WL 2154556, at *2, ¶ 15 (Ariz. App. May 14, 2024) (mem. decision) (rejecting the argument that "DCS was obligated to provide additional reunification services after the children were removed from Mother's care a second time following dismissal of the first dependency"); *Gerardo L. v. Dep't of Child Safety*, 1 CA-JV 18-0441, 2019 WL 1959967, at *3, ¶ 13 (Ariz. App. May 2, 2019) (mem. decision) (affirming termination under A.R.S. § 8-533(B)(11) without making an appropriate reunification services finding in the current dependency where such a finding was made in a prior dependency); *Shawn N. v. Dep't of Child Safety*, CA–JV 15–0361, 2016 WL 3884916, at *3, ¶ 16 (Ariz. App. July 14, 2016) (mem. decision) (same); *Vanetta H. v. Dep't of Child Safety*, 1 CA-JV 15-0115, 2015 WL 6391392, at *3, ¶ 13 (Ariz. App. Oct. 22, 2015) (mem. decision) (same). This interpretation is consonant with the purpose of § 8-533(B)(11) — to "expedite termination proceedings so that children will 'spend less time in foster care' and be placed in 'permanent homes sooner.'" *Adrian E. v. Dep't of Child Safety*, 239 Ariz. 240, 245, ¶ 21 (App. 2016).

**¶24** In short, A.R.S. § 8-533(B)(11) does not require DCS to provide additional reunification services in a current dependency provided that it made diligent efforts to provide those services in a recent dependency and the reunification needs have not significantly changed. The record here shows that DCS made diligent efforts to provide appropriate reunification services in the prior dependencies, which resulted in dismissal of those dependencies after F.G. was returned to Mother's care. Mother does not genuinely challenge that showing. Aside from a single mention in her brief

that the services provided "never addressed the underlying trauma that was the impetus for her substance abuse," Mother fails to develop any argument about the adequacy of the services provided in the first and second dependencies.

¶25 Mother does not challenge the superior court's analysis of the remaining § 8-533(B)(11) findings or the court's finding that termination of Mother's parental rights is in F.G.'s best interests. By failing to do so, she concedes that those findings are supported by the record and waives those issues on appeal. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577–78, ¶¶ 5–7 (App. 2017).

## II. Because Reasonable Evidence Supports the Superior Court's Findings on the Prior Removal Grounds, We Do Not Consider Mother's Arguments Regarding Substance Abuse and Futility.

¶26 Mother argues that the superior court erred by determining that further reunification services would be futile. Because, under the circumstances present here, no further reunification services were required, this argument can only apply to the superior court's findings on the substance abuse grounds under § 8-533(B)(3).

¶27 Mother has not shown the superior court erred in granting termination based on the prior removal statutory grounds. Thus, this court need not address her challenges to the substance abuse findings. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

### CONCLUSION

¶28 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:            JR