IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LORI LEE SHEETS, *Petitioner,*

*v.*

THE HONORABLE KATHLEEN MEAD, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge,*

BONNY JEAN REYNOLDS,
*Real Party in Interest.*

No. 1 CA-SA 15-0042
FILED 8-25-2015

Petition for Special Action from the Superior Court in Maricopa County
No.  FC2014-071548
The Honorable Kathleen H. Mead, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Berkshire Law Office, PLLC, Phoenix
By Keith Berkshire, J. Alexander Dattilo
*Counsel for Petitioner*

Mandel Young PLC, Phoenix
By Taylor C. Young
*Counsel for Real Party in Interest*

_____

## OPINION

Judge Peter B. Swann delivered the opinion of the court, in which Presiding Judge Kent E. Cattani and Judge Lawrence F. Winthrop joined.

_____

**S W A N N**, Judge:

¶1         Petitioner Lori Lee Sheets seeks relief from the superior court's order granting her former partner, Bonny Jean Reynolds, visitation with Sheets' adopted child ("Child") under A.R.S. § 25-409(C)(2).  We accept special action jurisdiction and grant relief because A.R.S. § 25-409(C)(2) authorizes the court to award visitation to a nonparent only if the child is "born out of wedlock." Child's adoption changed her legal status to that of a child born in wedlock, *see* A.R.S. § 8-117(A), and the superior court therefore erred by awarding Reynolds visitation.

## FACTS AND PROCEDURAL HISTORY

¶2         Sheets and Reynolds began a romantic relationship in 2000.  In 2009, both women were approved as foster parents to two-year-old Child under an adoption case plan.  The parties intended to raise Child together, with both acting as parents to Child, but they agreed that Sheets would be the adoptive parent because at that time same-sex couples were legally prohibited from marrying or adopting children together.

¶3         Sheets adopted Child in 2010.  Soon thereafter, her relationship with Reynolds ended.  Reynolds continued to maintain a relationship with Child, but, according to Reynolds, Sheets suddenly and arbitrarily stopped allowing her to see Child in April 2014.

¶4         Reynolds petitioned the superior court for equal-time visitation under A.R.S. § 25-409(C)(2), Sheets objected, and the matter proceeded to an evidentiary hearing.  The superior court awarded substantial visitation to Reynolds, finding that "the Child was born or adopted out of wedlock; the Child's legal parents are not married to each other; and [Reynolds] has a long term *in loco parentis* relationship with the Child," and that "it is in the Child's best interest to have consistent and continuing visitation with [Reynolds]."  The court denied both parties' requests for fees under A.R.S. § 25-324.

**¶5**        Sheets filed a motion for new trial, which the court denied.   Sheets seeks relief by special action.[1]

## JURISDICTION

**¶6**        We accept jurisdiction.  During the pendency of an appeal, Sheets' parental rights would be impaired, and Child would face a prolonged period of uncertainty concerning her living arrangement.  Sheets therefore has no equally plain, speedy, and adequate remedy by appeal.  Ariz. R.P. Spec. Act. 1(a). Special action jurisdiction is also appropriate because the issue presented is a pure question of law.  *Vo v. Superior Court (State)*, 172 Ariz. 195, 198 (App. 1992).

## DISCUSSION

**¶7**        We grant relief because the superior court acted in excess of its purely statutory authority under A.R.S. § 25-409 to grant nonparent visitation rights.  *See* Ariz. R.P. Spec. Act. 3(b); *In re Maricopa Cnty. Juv. Act. No. JA-502394*, 186 Ariz. 597, 599 (App. 1996).  Because of the statutory limit on the courts' authority, we are not permitted to engage in a best-interests analysis, and Sheets has not premised her petition on such an analysis.

**¶8**        As an initial matter, Reynolds contends that Sheets waived the issue of the court's authority under A.R.S. § 25-409 by not raising it in the superior-court proceedings.  Sheets responds that the issue is one of subject matter jurisdiction, which is not subject to waiver.  *See, e.g., Swichtenberg v. Brimer*, 171 Ariz. 77, 82 (App. 1991).

**¶9**         Though in the past courts have referred to "subject matter jurisdiction" to describe their authority under a specific controlling statute, *In re Marriage of Thorn*, 235 Ariz. 216, 220, ¶ 17 (App. 2014), "[i]n current usage, the phrase 'subject matter jurisdiction' refers to a court's statutory or constitutional power to hear and determine a particular type of case," *State v. Maldonado*, 223 Ariz. 309, 311, ¶ 14 (2010).  Here, the court's power to conduct visitation and parenting time proceedings is provided by A.R.S. § 25-402, and § 25-409 simply sets forth the substantive criteria that govern visitation petitions.

**¶10**        Still, this case presents an important question that is likely to recur regarding the substantive scope of the courts' statutory authority, and we are required to give effect to the Legislature's intent.  *See, e.g., Vega v. Sullivan*, 199 Ariz. 504, 507, ¶ 8 (App. 2001) ("Our primary objective is to discern and give

---

[1]        Sheets also timely appealed the court's order.  On her motion, we stayed the appeal pending resolution of this special action.

effect to the intent of the legislature . . . .").  We conclude that the doctrine of waiver cannot be appropriately applied in this circumstance and therefore proceed to address the merits.  *See Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 39 (App. 1996).

I.      THE SUPERIOR COURT EXCEEDED ITS AUTHORITY UNDER A.R.S. § 25-409.

¶11        Under previous versions of what is now A.R.S. § 25-409, nonparent visitation was limited to grandparents and great-grandparents.  *Finck v. O'Toole*, 179 Ariz. 404, 407 (1994).  In response to the supreme court's recognition of this limitation, "rather than simply adding step-parents and step-grandparents to the classes of [nonparent] parties entitled to petition for visitation [under § 25-409], the [1997] legislature enacted § 25-415(C)."  *Riepe v. Riepe*, 208 Ariz. 90, 95, ¶ 21 (App. 2004).  The new statute broadly provided that any "person" could petition for visitation.  A.R.S. § 25-415(C) (1997).  It expressly required, however, that a petitioner "meet the requirements of § 25-409."  A.R.S. § 25-415(C) (1997).

¶12        As had been the case since 1992, a person seeking nonparent visitation must demonstrate that "[t]he child was born out of wedlock."  A.R.S. § 25-409(A)(3) (1997); 1992 Ariz. Sess. Laws, ch. 139, § 1 (2d Reg. Sess.) (adding "born out of wedlock" requirement to § 25-409's predecessor statute).  In 2012, the Legislature combined §§ 25-415 and 25-409 and modified the "born out of wedlock" requirement to state: "[t]he child was born out of wedlock *and* the child's legal parents are not married to each other at the time the petition is filed."  *See* 2012 Ariz. Sess. Laws, ch. 309, §§ 19, 20, 24, 25 (emphasis added). The question in this case, therefore, is whether Child's adoption meant that she was not legally "born out of wedlock."

¶13        Before A.R.S. § 25-415 was enacted, we considered whether the requirement that a child be "born out of wedlock" could be satisfied after the child was adopted.[2]  *JA-502394*, 186 Ariz. at 599.  We held under A.R.S. § 8-117(A) that it could not.  *Id.*  The version of § 8-117(A) in effect at that time was substantially identical to the version currently in effect, which provides that "[o]n entry of the decree of adoption, the relationship of parent and child and all the legal rights, privileges, duties, obligations and other legal consequences of the natural relationship of child and parent thereafter exist between the adopted child and the adoptive parent as though the child were born to the adoptive parent *in lawful wedlock*." (emphasis added).  We held that though adoption cannot change the physiological fact that a child was born to unmarried parents,

---

[2]     The statute currently codified as A.R.S. § 25-415 addresses a subject not relevant to this case.

"the statute does effectively mandate that, after adoption and ever after, the child is indeed, before the law, born within 'lawful wedlock.'" *JA-502394*, 186 Ariz. at 599 & n.3.

¶14 We agree with the interpretation of § 8-117(A) in *JA-502394*. Reynolds' contention that § 8-117(A) is limited to inheritance issues is contrary to the statute's plain language. The statute broadly provides that an adoption will affect "*all* the legal rights, privileges, duties, obligations and other legal consequences of the natural relationship of child and parent." A.R.S. § 8-117(A) (emphasis added).[3]

¶15 We presume that the Legislature was aware of our decision in *JA-502394* when it broadened the category of persons who could petition for nonparent visitation by enacting § 25-415, and when it later combined that statute with § 25-409 and added the requirement regarding *current* marital status. *See State v. Bonillas*, 197 Ariz. 96, 97, ¶ 5 (App. 1999). We therefore infer that the Legislature intended the courts to continue construing the "born out of wedlock" requirement in accordance with § 8-117(A) and *JA-502394*. *See id.* at 98, ¶ 6.

¶16 We hold that a child who is adopted before a visitation petition is filed is not eligible for nonparent visitation under § 25-409(C)(2). *See Fry v. Garcia*, 213 Ariz. 70, 72-73, ¶¶ 8-12 (App. 2006) (holding that marriage of parents of child born out of wedlock did not divest court of jurisdiction under § 25-409 to consider grandparents' pending petition for visitation because, *inter alia*, "'jurisdiction is established at the time of filing of the lawsuit and cannot be ousted by subsequent actions or events'" (citation omitted)). Because Sheets adopted Child before the visitation dispute arose, the court had no authority to award visitation to Reynolds under § 25-409(C)(2).

¶17 We recognize that § 25-409(C)(2)'s requirements may lead to counterintuitive results. By requiring that the child be born in wedlock, the

---

[3] We also find unavailing Reynolds' contention that § 8-117(A)'s application renders § 25-409 inoperative. Reynolds argues that if the legal fiction created by § 8-117(A) applies to § 25-409, then § 25-1401 must also apply, which would result in all out-of-wedlock children being treated as in-wedlock children, such that nonparent visitation could never be granted under § 25-409(C)(2). Reynolds misconstrues § 25-1401. That statute provides: "Every child is the legitimate child of its natural parents and is entitled to support and education as if born in natural wedlock." Unlike § 8-117(A), § 25-1401 does not legally change a child's birth status. It merely provides that all parents are obligated to support their children, regardless of whether they were married when the children were born.

statute may treat similarly situated families differently. For example, divorced parents of a biological child have superior rights if they marry before their child was born rather than after birth, even though in both circumstances the child experienced the failure of the parents' marriage. And rights of divorced biological parents who sought dissolution around the time of their child's birth will depend on whether the dissolution was pending or concluded by the time of the birth, though in both circumstances the child was born into a failed marriage. Nonetheless, the Legislature has decided to ascribe importance to the marital status of a child's biological parents at the time of birth, and we are bound by the statutes it enacts. Similarly, the Legislature has made an understandable decision to ensure that adoptive parents enjoy a status equal to that of biological parents.

II.     THE SUPERIOR COURT ACTED WITHIN ITS DISCRETION BY DENYING SHEETS' REQUEST FOR ATTORNEY'S FEES.

¶18        Sheets contends that the superior court's denial of her request for attorney's fees was error. The parties did not argue the issue of the court's statutory authority in the proceedings below. Accordingly, the court's ruling on fees was based on its findings regarding the disparity in the parties' financial resources and the reasonableness of Sheets' position that Reynolds did not have an *in loco parentis* relationship with Child. We discern no abuse of discretion in the court's analysis and conclusion that neither party was entitled to fees.

**CONCLUSION**

¶19        For the foregoing reasons, we accept jurisdiction and grant relief. In exercise of our discretion, we deny Sheets' request for her fees in this special action under A.R.S. § 25-324.



Ruth A. Willingham · Clerk of the Court
FILED : ama