IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

SUSAN M. DOTY-PEREZ, *Petitioner/Appellant*,

*v.*

TONYA L. DOTY-PEREZ, *Respondent/Appellee*.

No. 1 CA-CV 15-0844 FC
FILED 12-29-16

Appeal from the Superior Court in Maricopa County
No. FN2015-001747
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

COUNSEL

Gregg R. Woodnick PLLC, Phoenix
By Leslie A.W. Satterlee, Markus W. Risinger
*Counsel for Petitioner/Appellant*

Berkshire Law Office PLLC, Phoenix
By Keith Berkshire, Megan Lankford
*Counsel for Respondent/Appellee*

_____

**OPINION**

Judge Jon W. Thompson delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge Charles W. Gurtler[1] joined.

_____

**T H O M P S O N**, Judge:

¶1          Appellant, Susan M. Doty-Perez (Susan), seeks reversal of the family court's order denying her request to be declared a legal parent of four children legally adopted by her ex-spouse while they were married, in light of the United States Supreme Court's marriage equality decision in *Obergefell v. Hodges*, 576 U.S. __, 135 S.Ct. 2584 (2015).  For the following reasons, we affirm the family court's decision.

**FACTUAL AND PROCEDURAL HISTORY**

¶2          Susan and Appellee, Tonya L. Doty-Perez (Tonya), began living together in October 2010.  Tonya adopted a child, who is not a subject of this appeal, two months later.   The parties were legally married in Iowa in July 2011, but at all relevant times resided in Arizona.

¶3          Subsequent to their marriage, the parties agreed that Tonya would adopt four special needs children from foster care in May 2012, January 2013, April 2013, and February 2014, respectively.  While the parties agreed Tonya would be the adoptive parent, they intended to raise the four children together, as two parents.  They would have adopted the children together but could not because, at the time of the adoptions, Arizona did not recognize same-sex marriage and legally prohibited same-sex adoptions.

¶4          At some point, the parties' relationship began to erode.  Susan alleges that, as their relationship was ending, on April 8, 2014, she asked Tonya for permission to adopt the children through a second-parent adoption, but Tonya did not consent.   Susan moved out of the marital residence on April 12, 2014.   She did not petition to adopt the children.

_____

[1]     The Honorable Charles W. Gurtler, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article 6, Section 3 of the Arizona Constitution.

¶5        On October 7, 2014, the Ninth Circuit declared non-recognition of same-sex marriage unconstitutional in *Latta v. Otter*, 771 F.3d 456, 464-65 (9th Cir. 2014).  On October 17, 2014, in *Majors v. Horne*, 14 F. Supp. 3d 1313, 1315 (D. Ariz. 2014), the U.S. District Court for the District of Arizona declared Arizona's ban on same-sex marriage unconstitutional, and enjoined the state from enforcing its ban.  Susan filed a Petition for Dissolution of Non-Covenant Marriage Without Minor Children and also requested *in loco parentis* visitation on April 14, 2015.  She later clarified the latter was a temporary orders request.[2]  In May 2015, Susan requested to amend her petition to a "Petition to [sic] Dissolution of Marriage WITH children and request for joint legal decision making and parenting time."

¶6        In June 2015, the United States Supreme Court decided *Obergefell*.  In that case, the Court held the Fourteenth Amendment requires states to both license same-sex marriages and to recognize same-sex marriages that were lawfully licensed and performed in another state. *Obergefell*, 576 U.S. at __, 135 S.Ct. at 2593-608.

¶7        The following month, Susan filed a "Motion to Find Petitioner a Parent of Minor Children and Memorandum in Support of Amended Petition for Dissolution With Children."  After additional briefing and oral argument, the court issued an order denying Susan's petition to be declared a legal parent.  In its order, the court found: (1) Susan "has proven by a preponderance of the evidence that had Arizona allowed same-sex-marriage and adoption at the time of the adoption of the four (4) children, the parties would have jointly adopted the children;" (2) after October 17, 2014, Susan could have filed a legal request to adopt the children but did not do so; and (3) after October 2014 Susan asked Tonya if she could enter into a step-parent adoption, but Tonya denied that request.

¶8        Susan timely appealed to this court.  We have jurisdiction[3] under Article 6, Section 9, of the Arizona Constitution and pursuant to

---

[2]        As of this appeal, Susan has temporary *in loco parentis* visitation with all five children under an order entered by stipulation.  The issue of *in loco parentis* visitation is not before us in this appeal.  The family court entered an appealable "Order/Judgment Pursuant to Rule 78(B)" only as to the issues of parentage, legal decision-making, parenting time, and child support.

[3]        On appeal, Tonya argues this case is not "ripe" for judicial review, and thus not justiciable, because there was no joint petition, or denial of a

Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1) (2016) and -2101 (2016).[4]

## DISCUSSION

**¶9** The parties raise many arguments, some of which are inconsistent with each other, and the briefs do not join all of the issues. To assure the parties that we have considered their respective arguments on appeal, we begin by summarizing the issues. Ultimately, we find one dispositive issue, *see infra* ¶ 15, and based on our resolution of that issue, affirm the family court's decision.

**¶10** Susan argues the family court should have declared her to be a legal parent of the four children through either of two legal avenues— 1) by modifying the adoption decrees to declare her a legal parent of the four children, or 2) in the alternative, by declaring her a de facto parent with full legal parent status, as in *In re Parentage of L.B.*, 122 P.3d 161 (Wash. 2005).

**¶11** As to the issue of modifying the adoption decrees, Susan claims the family court erred in declining to modify the decrees, under the existing statutory scheme, because under *Obergefell* Arizona's refusal to recognize the parties' 2011 marriage was unconstitutional, and but for that infirmity, Susan and Tonya would have jointly adopted all four children, in accordance with their intent and pursuant to A.R.S. § 8-103(A) (2016).[5] The statute she cites provides that "[a]ny adult resident of this state, whether married, unmarried or legally separated, is eligible to qualify to adopt children. A husband and wife *may* jointly adopt children." (Emphasis added.) A.R.S. § 8-103(A). Susan contends that because § 8-103(A) would have allowed her to adopt the children with Tonya, but for Arizona's

---

petition, for adoption of the four children. We disagree. Here, we are presented with a legal conflict pertaining to the adoption or legal parentage of the four subject children; this is a conflict well within our powers to decide. *See, e.g.*, *Winkle v. City of Tucson*, 190 Ariz. 413, 417, 949 P.2d 502, 506 (1997) (indicating a case is ripe for review when it presents an actual conflict).

[4]    Absent material changes after the relevant date, we cite a statute's current version.

[5]    Susan argues the family court should utilize the "remedy" of a *nunc pro tunc* order to retroactively cure the constitutional prohibition. A *nunc pro tunc* order is not a remedy and therefore not a viable option in this case.

unconstitutional refusal to recognize their marriage, the family court should have ruled that she in effect *did* jointly adopt the children with Tonya. As noted, Susan did not file a petition to adopt under § 8-103(A) after *Latta*, *Majors,* or *Obergefell.* Such an adoption would have required Tonya's consent. *See* A.R.S. § 8-106(A)(1) (2014). Susan contends that, given Tonya's refusal to consent, she would have risked sanctions for bringing a frivolous claim if she had filed an adoption petition.

¶12            As to the issue of de facto parentage, Susan argues the court may exercise its equitable authority to recognize de facto parentage and grant her parental status equivalent to that of a legal parent, "even if limited to cases in which married parties adopt children but the adoption order lists only one spouse as a parent."   In support of this argument, she asserts that because A.R.S. § 8-117(A) (2014) states that an adoptive child should be treated as though the child was born "in lawful wedlock" she is deemed the presumptive second parent pursuant to A.R.S. § 25-814's marital presumption. *See* A.R.S. § 25-814 (A)(1) (2007).

¶13            Susan additionally maintains that the family court's failure to grant her legal parent status violates the Fourteenth Amendment's due process and equal protection guarantees by denying the children the psychological benefits of a parental relationship with her and subjecting them to inequitable treatment because they were adopted into a family with same-sex parents prior to marriage equality in Arizona.

¶14            In response to the first argument, Tonya argues that *Obergefell* has not been held to retroactively create adoptions in situations, like this, where only one party to a same-sex marriage was allowed to adopt a child. She additionally argues that because A.R.S. § 8-103(A) does not require married couples to adopt jointly, but only permits them to do so, absent a joint request, the court is bound to grant parentage only to an individual who actually petitions for adoption, and not also to his or her spouse. As to Susan's second argument, Tonya posits that Arizona does not recognize de facto parentage under either A.R.S. §§ 25-401(4) (defining a legal parent), -814, or 8-117(A).

¶15            We agree with Tonya that Arizona does not recognize de facto parentage.[6] We find the dispositive issue is whether, as a matter of law, if

---

[6]      There is no Arizona statute recognizing the equitable de facto parent doctrine.   Furthermore, the doctrine is not ordinarily recognized as supporting an argument for gaining parental status equivalent to that of a

a married person adopts a child, that person's spouse is also deemed or presumed to be a legal parent, with all the legal rights and obligations attached to that status, merely because the couple intended to adopt together.  We think not.

**¶16**        Pure questions of law, including those involving constitutional provisions, are reviewed de novo.  *Hall v. Lalli*, 194 Ariz. 54, 57, ¶ 5, 977 P.2d 776, 779 (1999); *Cave Creek Unified Sch. Dist. v. Ducey*, 231 Ariz. 342, 347, ¶ 8, 295 P.3d 440, 445 (App. 2013).  We recognize that under *Obergefell*, Arizona must credit the parties' marriage as having taken place in 2011, prior to Tonya's adoption of the four children.  *See Obergefell*, 576 U.S. at __, 135 S.Ct. at 2607-08 (stating a state must give full faith and credit to marriages lawfully licensed in other states).  However, we do not read *Obergefell* to support Susan's paramount contention that the right of same-sex couples to marry and have their marriages recognized under the Fourteenth Amendment of the U.S. Constitution requires that states retroactively modify adoptions by individuals in same-sex marriages who would have jointly adopted, if they had been allowed to.  *See id.* at 2601

legal parent, as Susan argues for here.  *See, e.g., Miller v. California,* 355 F.3d 1172, 1176 (9th Cir. 2004) ("A de facto parent has an interest in the care of the child that is entitled to legal protection; however, de facto parents are not equated with biological parents."); *Olvera v. Cty. of Sacramento*, 932 F. Supp. 2d 1123, 1141 (E.D. Cal. 2013) (recognizing the limited rights de facto parent status provides and that such rights "are not equated with the rights of parents") (internal quotation and citation omitted); *E.N.O. v. L.M.M.*, 711 N.E.2d 886, 891 (Mass. 1999) ("A child may be a member of a nontraditional family in which he is parented by a legal parent and a de facto parent.").

Moreover, the only Arizona Court of Appeals opinion discussing the doctrine, *Egan v. Fridlund-Horne*, 221 Ariz. 229, 237, ¶ 27, 211 P.3d 1213, 1221 (App. 2009), "sharply disagree[d]" with *In re Parentage of L.B.*, which Susan contends is her strongest authority for applying the equitable theory in this case.  Even though the petitioner in *Egan* did not expressly seek visitation under the doctrine, *Egan* expressed vigorous disagreement with the Washington Supreme Court's conclusion that "if a person can establish standing as a de facto parent, then that person has a fundamental liberty interest in the care, custody, and control of the child, to the same extent as the legal parent." *Id.* (citing *In re Parentage of L.B.*, 122 P.3d at 178, ¶ 45) (holding that Washington's "common law recognizes the status of *de facto* parents and places them in parity with biological and adoptive parents").  Washington's common law logic holds no weight in this state.

(explaining that marriage is a historical basis for "an expanding list of governmental rights, benefits, and responsibilities," including "adoption rights," but not addressing the issue of same-sex adoptions, neither retroactively nor prospectively). In the absence of a constitutional mandate under *Obergefell* to retroactively modify adoption decrees, we turn to what is permissible under Arizona law.

¶17        In Arizona, adoption is a creature of statute. *Matter of Estate of Ryan*, 187 Ariz. 311, 312, 928 P.2d 735, 736 (App. 1996) (stating that adoption is a statutorily created concept, unknown at common law and within the legislature's power to "define and regulate") (internal quotation and citations omitted); *Anguis v. Superior Court In and For Maricopa Cty.*, 6 Ariz. App. 68, 72, 429 P.2d 702, 706 (App. 1967) (noting that adoption "exists as a creature of statute which must be strictly construed"). We review issues of statutory construction and interpretation de novo. *See Barry v. Alberty*, 173 Ariz. 387, 389, 843 P.2d 1279, 1281 (App. 1992) (citations omitted).

¶18        The court's primary goal in interpreting a statute is to give effect to legislative intent, focusing on the plain language as the indicator of that intent. If a statute's language is unambiguous and the meaning does not create an impossibility or absurdity, "courts must observe the natural import of the language used and are not free to extend the meaning though the result may be harsh, unjust or mistaken policy." *Members of Bd. of Educ. of Pearce Union High School Dist. v. Leslie*, 112 Ariz. 463, 465, 543 P.2d 775, 778 (1975) (citation omitted). Applying those rules of statutory construction, we hold that Susan is not entitled to parental status or full legal parental rights under any of the relevant statutory provisions.

¶19        In the case of adoption, in contrast to biological parentage, there is no presumption, either under A.R.S. § 25-814[7] or any other related

---

[7]        This statute confers a paternal presumption of parentage to the husband of a woman who *gives birth* to a child, if the two were married "at any time in the ten months immediately preceding the birth [of the child] or the child is born within ten months after the marriage is terminated . . . ." A.R.S. § 25-814(A)(1). *McLaughlin v. Jones (McLaughlin)*, 240 Ariz. 488, 382 P.3d 118 (App. 2016), which involved a child born to a mother in a same-sex marriage and invoked this marital presumption on behalf of the non-birthing spouse, does not apply in this case involving adopted children. Tonya adopted the children and this case involves no issue as to the

Arizona statute, granting legal parental rights or obligations to a non-adoptive spouse merely because of her marriage to a person who has adopted a child.   To be vested with such rights and to be so beholden, an individual, either separately, or, if married, jointly with another individual, must formally adopt the child.  *See* A.R.S. § 25-401(4) (2013) (defining a legal parent as "a biological or adoptive parent . . .").  To be sure, in light of *Obergefell*, A.R.S. § 8-103's language that "[a] husband and wife may jointly adopt," *see supra* ¶ 11, must be interpreted to also mean that "a wife and wife" or "husband and husband" may jointly adopt.   However, the adoption statute's use of the permissive "may" indicates there is no presumption of parentage for a non-adoptive spouse.[8]  To apply such a presumption would be to ignore an adoptive parent's spouse's individual agency to decide whether to directly and deliberately assume the role of a legal parent by taking the steps necessary to establish a legal relationship with the adopted child.

**¶20**　　　　　Nor does A.R.S. § 8-117(A) support a different conclusion.  A proper reading of the statute's "in lawful wedlock" language is not susceptible to the determination for which Susan argues when the statute is examined in its entirety.  Susan essentially contends that we should read the "in lawful wedlock" language to deem every adoption by one married parent a two-parent adoption based solely on the parties' intent to adopt together.[9]　　However, "[e]very provision of a statute must be read in

biological parents of these four children, whose rights necessarily would have been waived or severed prior to the adoptions.

[8]　　　The parties have cited no authority, and we are unaware of any, where a presumption of paternity has been applied to the husband of a woman who adopts a child by herself.

[9]　　　We reject Susan's request that we consider this case, and particularly A.R.S. § 8-117(A), in the context of *Sheets v. Mead*, 238 Ariz. 55, 356 P.3d 341 (App. 2015).  *Sheets* did not directly analyze section 8-117(A), but analyzed it so as to give meaning to the family court's ability to award visitation to a nonparent under A.R.S. § 25-409(C)(2), if visitation is deemed in the best interest of the child and the child was "born out of wedlock and the child's legal parents are not married to each other at the time the petition is filed." A.R.S. § 25-409(C)(2); *see Sheets*, 238 Ariz. at 56-58, ¶¶ 1, 12-17, 356 P.3d at 342-344.  The ultimate conclusion in *Sheets* was that the court was without authority to award *in loco parentis* visitation with an adopted child to a nonparent, under A.R.S. § 25-409, without the consent of the unmarried

conjunction with the other provisions, giving meaning, if possible, 'to each word, clause or sentence, considered in the light of the entire act itself and the purpose for which it was enacted into law.'" *State v. Jones*, 196 Ariz. 306, 307, ¶ 7, 995 P.2d 742, 743 (App. 1999) (quoting *Frye v. South Phoenix Volunteer Fire Co.*, 71 Ariz. 163, 168, 224 P.2d 651, 654 (1950)). In its entirety, A.R.S. § 8-117(A) provides:

> On entry of the decree of adoption, the relationship of parent and child and all the legal rights, privileges, duties, obligations and other legal consequences of the natural relationship of child and parent thereafter *exists between the adopted child and the adoptive parent* as though the child were born in lawful wedlock. The adopted child is entitled to inherit real and personal property from and through the adoptive parent and the adoptive parent is entitled to inherit real and personal property from and through the adopted child the same as though the child were *born* to the adoptive parent in lawful wedlock.

(Emphasis added.)

**¶21**        Section 8-117(A)'s language is clear that the "rights, privileges, duties . . ." created by an adoption decree exist between the adopted child and the adoptive parent, as if the child had been born to the adoptive parent. Under the statute the "in lawful wedlock" status is only attached to the child through the decree of adoption. The statute thus arranges the adopted child's status relative only to an adoptive parent or parents. It does not also implicitly create an adoption of the child by a spouse who has not actually adopted the child. If the legislature intended A.R.S. § 8-117(A) to have the effect that Susan argues for, it would have worded the statute to say "between the adopted child and the adoptive parent and his or her spouse."

---

adoptive parent, because A.R.S. § 8-117(A) changed the status of an adoptive child to that of a child "born in wedlock." *Sheets*, 238 Ariz. at 56, ¶ 1, 356 P.3d at 342. Thus, as Susan concedes, *Sheets* is distinguishable from this case as it examined the issue of *in loco parentis* visitation rights of a nonparent, which as noted *supra* note 2, is not before this court. Even if *Sheets* pertained to the issue of parental status, it would not support a change of Susan's parental status as a result of her being married to Tonya, as Susan argues; Susan would still legally be a nonparent as to the four children.

¶22 Additionally, the clear interpretation of A.R.S. § 25-401(4)'s definition of a legal parent, *see supra* ¶ 19, is that, except in the case of biology, the only legal mechanism that may establish legal parenting status and attach the associated rights and obligations is an order of adoption.

¶23 Thus, we cannot order legal parent status for Susan, despite the fact that the parties intended to adopt the children together, but did not only because it was legally impermissible at the time, and Tonya later refused to consent to Susan petitioning for adoption of the four children, prior to their divorce and after same-sex adoptions were legal in Arizona. We are without authority to confer legal parent status to Susan when she *never actually petitioned* the court to acquire that status while she was still married to Tonya. While we empathize with Susan because our holding leaves her without parental rights and obligations for four children she loves, provided and cared for, the relevant statutes do not support a contrary conclusion.

## CONCLUSION

¶24 For the reasons stated above, we affirm the court's order denying Susan's request to be declared a legal parent of the four children legally adopted by her ex-wife during their marriage.

