398 P.3d 110

**Heather Lynn TURNER, Petitioner,**

v.

**The Honorable Ronee Korbin STEINER, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,**

**Liza Michelle Oakley, Real Party in Interest.**

**No. 1 CA-SA 17-0028**

Court of Appeals of Arizona, Division 1.

FILED 6/22/2017

---

Berkshire Law Office, PLLC, Phoenix, By Keith Berkshire, Erica L. Gadberry, Counsel for Petitioner

Campbell Law Group, Chartered, Phoenix, By Claudia D. Work, National Center for Lesbian Rights, San Francisco, CA, By Shannon Price Minter, pro hac vice, Counsel for Real Party in Interest

Child and Family Law Clinic, The University of Arizona College of Law, Tucson, By Paul D. Bennet, Barbara A. Atwood, Negar Katirai, Amicus Curiae

Presiding Judge Randall M. Howe delivered the opinion of the Court, in which Judge Jon W. Thompson joined and to which Judge Lawrence F. Winthrop dissented.

## OPINION

HOWE, Judge:

¶ 1 Heather Lynn Turner seeks special action relief from the family court's granting Liza Michelle Oakley's motion for reconsideration of the family court's temporary orders, which gives Oakley rights as a legal parent to minor child C.T. pending the resolution of their marriage dissolution proceedings. In doing so, the family court held that Oakley is presumed to be C.T.'s parent under A.R.S. § 25–814(A)(1). The court also ruled that Turner is equitably estopped from rebutting that presumption because her actions before the proceedings began were "consistent with the position that this was a child of both parties." Turner argues that the family court erred because A.R.S. § 25–814 applies only to men and cannot be applied to presume paternity by a woman. She further argues that if the presumption applies, the court erred by ruling that she is estopped from rebutting it.

¶ 2 Special action jurisdiction is appropriate because Turner does not have an "equally plain, speedy and adequate remedy by appeal." Ariz. R. Spec. Act. 1(a). Orders that are merely preparatory to a later proceeding are not appealable. *Villares v. Pineda*, 217 Ariz. 623, 624–25 ¶ 10, 177 P.3d 1195, 1196–97 (App. 2008). Because the family court's temporary orders here are merely preparatory to a later trial on the dissolution, we accept jurisdiction. We grant relief and reverse the family court's ruling because the presumption of paternity statute, A.R.S. § 25–814, is gender-specific and cannot be applied to—or rewritten by the courts to apply to—women. In so holding, we respectfully disagree with a recent decision of another panel of this Court holding that the female spouse of a child's mother can claim a presumption of parentage under the statute. *McLaughlin v. Jones*, 240 Ariz. 560, 382 P.3d 118 (App. 2016), *rev. granted*, Apr. 18, 2017. Because we conclude that the presumption is not applicable here, we need not reach the issue of equitable estoppel.

## FACTS AND PROCEDURAL HISTORY

¶ 3 Turner and Oakley, who were in a long-term committed relationship, began attempting to conceive a child through artificial insemination in 2013. Although Turner would carry the child, the pair entered no formal written or oral agreements regarding parenting roles or rights that either would have over the child. The parties discussed whether Oakley should formally adopt the child should Turner become pregnant, but were unsure if adoption was necessary or if "just

being on the birth certificate was enough." Turner did, however, draft a will stating that if she gave birth, Oakley would have sole custody of the child if Turner were to die. Turner and Oakley married in October 2014.

¶ 4 Oakley played an active role in the artificial insemination process, including reviewing sperm donor profiles, accompanying Turner to appointments, and being with Turner during the insemination procedures. Oakley did not, however, pay for any of the services or sign any fertility clinic documents. Instead, Turner—as the recipient of services—signed them. One of the documents contained a provision stating that Turner agreed that any child born from the insemination process would be the legal child of the recipient, "which designation shall include both recipient and recipient's husband or partner if applicable," and that if a child is born "to husband and wife, such child ... is considered their own."

¶ 5 Turner became pregnant through an insemination procedure and gave birth to C.T. in September 2015. Oakley was present at C.T.'s birth and cut the umbilical cord. When instructing Turner on how to obtain a birth certificate, a hospital nurse told Turner to list Oakley on the certificate in the section designated "father." Turner did so, listing both herself and Oakley on C.T.'s birth certificate. Neither Turner nor Oakley took further action to determine whether Oakley needed to formally adopt the child.

¶ 6 This unexplored issue became important in May 2016, when Turner petitioned for dissolution of her marriage to Oakley. In her petition, Turner stated that she and Oakley "have one minor child born of the marriage," explaining that Turner was impregnated through artificial insemination and that although Oakley was listed on the birth certificate, Oakley had not formally adopted C.T. Turner asked that she be granted sole legal and physical custody of C.T. and that Oakley receive supervised visitation. She also asked that Oakley be required to pay child support. In a subsequent pleading, Turner asserted that because Oakley is neither C.T.'s natural nor adoptive parent, Oakley could not assert any rights regarding temporary legal decision-making or parenting time.

¶ 7 At the temporary orders hearing, Oakley asserted that she had rights as C.T.'s legal parent. She argued that although she is not the child's biological or adoptive parent, she is the presumed parent under A.R.S. § 25–814(A)(1), which states that "a man is presumed to be the father of a child" if he and the mother were married within ten months of the child's birth. The family court disagreed, concluding that the presumption of paternity statute applied only to men and that Oakley therefore could not claim the presumption. The court also concluded that even if the presumption applied, the presumption would be rebutted because Oakley is not biologically related to C.T. Accordingly, the family court entered temporary orders identifying Turner as C.T.'s sole legal parent, but granting Oakley supervised visitation under A.R.S. § 25–409.

¶ 8 Oakley moved for reconsideration. While the motion was pending, another panel of this Court issued its decision in *McLaughlin*, holding that A.R.S. § 25–814(A)(1) must be read and applied gender-neutrally. 240 Ariz. at 564 ¶ 14, 382 P.3d at 122. It also held that the child's biological mother in that case was equitably estopped from disputing that her wife was the legal parent in the parties' dissolution proceedings because the parties had entered into an agreement guaranteeing equal parenting rights, her wife was a beneficiary of her will, and her wife had been a de facto parent of the child for two years. *Id.* at 565–67 ¶¶ 16–23, 382 P.3d at 123–24. Noting that *McLaughlin* now guided its decision, the family court granted Oakley's motion for reconsideration. The family court ruled that Oakley was a presumed parent and set an evidentiary hearing to determine whether evidence rebutted the presumption or whether Turner was estopped from rebutting it.

¶ 9 At the evidentiary hearing, the family court heard testimony from Turner and Oakley about Turner's representations that Oakley was C.T.'s co-parent. The court also considered evidence that they each presented, including social media posts in which Turner called Oakley C.T.'s mother. The family court concluded that Turner was equitably estopped from rebutting the presumption because the evidence showed that the two wom-

en intended to raise the child together as co-parents. Turner petitioned for special action review.

## DISCUSSION

¶ 10 Turner first argues that the family court erred by holding that the presumption of paternity created by A.R.S. § 25–814(A)(1) applies to Oakley, giving her rights as C.T.'s legal parent. We review issues involving statutory interpretation and constitutionality de novo. *Lincoln v. Holt*, 215 Ariz. 21, 23 ¶ 4, 156 P.3d 438, 440 (App. 2007). Our primary goal in interpreting a statute is to give effect to legislative intent. *JHass Grp. L.L.C. v. Ariz. Dep't of Fin. Insts.*, 238 Ariz. 377, 384 ¶ 27, 360 P.3d 1029, 1036 (App. 2015). In doing so, we look to the statute's plain language as the best indicator of that intent. *Azore, LLC v. Bassett*, 236 Ariz. 424, 427 ¶ 8, 341 P.3d 466, 469 (App. 2014). Further, we must construe the statute in context with other related provisions and its place in the statutory scheme. *Hosea v. City of Phx. Fire Pension Bd.*, 224 Ariz. 245, 250 ¶ 23, 229 P.3d 257, 262 (App. 2010). When the statute's language is clear and unambiguous, we must give effect to that language without employing other rules of statutory construction. *Indust. Comm'n of Ariz. v. Old Republic Ins. Co.*, 223 Ariz. 75, 77 ¶ 7, 219 P.3d 285, 287 (App. 2009). Because A.R.S. § 25–814's language is clearly and unambiguously gender-specific to apply to men, the family court erred by applying the presumption of paternity to Oakley.

¶ 11 In proceedings for dissolution of marriage with children, the family court must often determine who has parental rights to the children. Arizona's legislature has defined a "legal parent" as "a biological or adoptive parent whose parental rights have not been terminated" and "does not include a person whose paternity has not been established" through voluntary acknowledgement or the presumption of paternity statute. A.R.S. §§ 25–401(4), –812, –814. The presumption of paternity statute provides that "[a] man is presumed to the father of the child if: (1) "[h]e and the mother of the child were married at any time in the ten months immediately preceding the birth" or the child

is born within ten months after the marriage is terminated; (2) genetic testing confirms at least a 95% probability of paternity; (3) the mother and father of a child born out of wedlock sign the birth certificate; or (4) both parents acknowledge paternity in a notarized or witnessed statement. A.R.S. § 25–814(A). The presumption can be rebutted by clear and convincing evidence. A.R.S. § 25–814(C).

¶ 12 Here, the statute's language clearly and unambiguously provides that it applies solely to men. The statute creates a presumption of "paternity." "Paternity" means "the fact or condition of being a father." Webster's II New College Dictionary 805 (2011). The statute further provides that a "man is presumed to be the father of a child" if one of the enumerated circumstances exists. Given their ordinary meanings, "man" means "an adult male human being," *id.* at 664, and "father" means "the male parent of a child," *id.* at 408. Each of these words is gender-specific to males and not applicable to females. *See Sheldrick v. Maricopa Cty. Superior Court*, 136 Ariz. 329, 331, 666 P.2d 74, 76 (1983) (stating that a statute permitting a natural mother to initiate a paternity proceeding or a father to initiate a maternity proceeding did not allow "for the bringing of a paternity action against the mother, nor a maternity action against the father").

¶ 13 The context in which those words exist further supports this conclusion. *See Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 326 ¶ 12, 266 P.3d 349, 352 (2011) (stating that the courts do not consider words in isolation when interpreting statutes). The Legislature has adopted an entire statutory scheme relating to "Maternity and Paternity Proceedings." *See generally* A.R.S. §§ 25–801–818. To give effect to the Legislature's delineation of different guidelines for each, the ordinary and contrasting meanings of "maternity" and "paternity" need to be applied. Ignoring the gender-specific language would disrupt this statutory scheme.

¶ 14 Notwithstanding the ordinary meaning of the statute's plain language, Oakley urges that the presumption statute must be construed gender-neutrally so that the presumptions may apply to women as well as men—the conclusion reached in *McLaughlin*.

498

She contends that the United States Supreme Court's decision in *Obergefell v. Hodges*, —— U.S. ——, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015), demands that it be read gender-neutrally. Oakley's—and the *McLaughlin* court's—analysis of *Obergefell* and the presumption statute is flawed in three respects.

¶ 15 The first flaw is that *Obergefell* does not extend so far as to require the courts to modify statutory schemes relating to same-sex parenting. *Cf. Doty–Perez v. Doty–Perez*, 241 Ariz. 372, 375 ¶ 16, 388 P.3d 9, 12 (App. 2016) (stating that *Obergefell*'s holding does not require the court to retroactively modify adoptions by individuals in same-sex marriages who would have jointly adopted if same-sex marriage was legal at the time). *Obergefell* established two points of constitutional law under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. First, marriage is a fundamental right that the government cannot deny to same-sex couples. *Obergefell*, 135 S.Ct. at 2604–05. Second, all states must give full faith and credit to same-sex marriages performed in other states. *Id.* at 2607–08. Although the Court cited to the importance of legitimizing all unions for, among other reasons, the stability and safeguards it provides to families and children, neither of the Court's holdings mandates that any laws dealing with maternity and paternity be changed or expanded. *See id.* at 2599–600; *see also Smith v. Pavan*, 505 S.W.3d 169, 176–77 (Ark. 2016) *pet. for cert. filed* (U.S. Feb. 13, 2017) (concluding that *Obergefell* does not require the state to apply its law deeming a mother's "husband" as the child's father for birth certificate purposes in a gender-neutral manner to female same-sex parents); *In re P.L.L.-R*, 366

Wis.2d 134, 876 N.W.2d 147, 153 (2015) (finding that "*Obergefell* did not answer questions regarding Wisconsin's presumption of paternity statute … [or] artificial insemination statute," and therefore declining to read those statutes gender-neutrally).

¶ 16 Oakley argues that *Obergefell* nevertheless requires that the presumption statute be read gender-neutrally because it invalidates state laws "to the extent they exclude same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples." 135 S.Ct. at 2605. But the purpose of the presumption statute is to assist in determining whether a man is a child's biological father, *see Hall v. Lalli*, 194 Ariz. 54, 59–60 ¶¶ 13–18, 977 P.2d 776, 780–81 (1999) (discussing the interests of the child, State, and mother in paternity), not to broadly establish a term or condition associated with marriage. Thus, *Obergefell* does not mean that the presumption statute is unconstitutional unless its language is judicially interpreted gender-neutrally.

¶ 17 The second flaw is that Oakley and the *McLaughlin* court misunderstand the role of biology in determining parentage in Arizona and in serving as the basis of the presumption statute. The *McLaughlin* court believed it could interpret the statute's obviously "male-specific terms" in a gender-neutral fashion because the presumptions were "not necessarily biologically based." [1] 240 Ariz. at 564 ¶ 15, 382 P.3d at 122. According to *McLaughlin*, the statute addresses more than mere paternity, and broadly encompasses "the notion of parenthood" "without regard to biology." *Id.* But this conclusion fails to recognize that—with the exception of adoption, which is not involved in this case—parentage in Arizona *is* determined by biology.[2] *See* A.R.S. § 25–401(4) ("'Legal parent'

---

1. *McLaughlin* states that only one of the four presumptions is biologically based, A.R.S. § 25–814(A)(2) ("Genetic testing affirms at least a ninety-five per cent probability of paternity."), 240 Ariz. at 564 ¶ 15, 382 P.3d at 122. *McLaughlin* claims that the presumption at issue here, A.R.S. § 25–814(A)(1)—a man is presumed to be the father if he is married to the child's mother within ten months preceding or following the child's birth—is not. Although perhaps not obvious on its face, this presumption is indeed grounded in biology. Ten months roughly corresponds to the human gestation period and "the

laws of nature" suggest that the male spouse during that period would be the child's father. *Cf. Anonymous v. Anonymous*, 10 Ariz.App. 496, 499, 460 P.2d 32, 35 (App. 1969) (stating that the "presumption of legitimacy" rule requires that "if a husband had access to his wife so that by the laws of nature he could be the father of a child born in wedlock, it must be presumed to be his").

2. At oral argument before this Court, Oakley contended that in addition to biology or adop-

means a biological or adoptive parent whose parental rights have not been terminated."); *Doty–Perez*, 241 Ariz. at 377 ¶ 23, 388 P.3d at 14 (noting that biology and adoption are "the only legal mechanism that may establish legal parenting status"). The presumption statute must be viewed in that light and not on the basis of a non-statutory "notion of parenthood." Arizona does not recognize de facto parentage. *Doty–Perez*, 241 Ariz. at 375 ¶ 15, 388 P.3d at 12.

¶ 18 Moreover, biology—the biological difference between men and women—*is* the very reason the presumption statute exists. A child's mother is usually readily determined by a woman's biological act of giving birth. *See Adoptive Parents of M.L.V. v. Wilkens*, 598 N.E.2d 1054, 1059 (Ind. 1992) ("Because it is generally not difficult to determine the biological mother of a child, a mother's legal obligations to her child arise when she gives birth.").[3] Thus, Arizona does not need, and does not have, a "presumption of maternity" statute. But the act of birth reveals nothing about the identity of the child's biological father. *See Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 63, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001) (noting that "fathers and mothers are not similarly situated with regard to proof of biological parenthood"). Consequently, to help determine whether a particular man is a child's father, the Legislature enacted the presumption of paternity statute. Given the statute's purpose, its limited application to men is not remarkable or constitutionally infirm. *See id.* (stating that imposing "a different set of rules for making [a] legal determination with respect to fathers and mothers

tion, satisfying one of the paternity presumptions was a third way to establish parentage in Arizona. For that proposition, she relied on the second sentence in A.R.S. § 25–401(4), which states that a "[l]egal parent does not include a person whose paternity has not been established pursuant to § 25–812 [voluntary acknowledgement] or 25–814 [presumption of paternity]." But that sentence merely means that a man does not come within the definition of "legal parent" unless paternity has been established by (1) voluntarily acknowledging paternity and withstanding any challenge to that acknowledgement pursuant to A.R.S. § 25–812, or (2) proving the existence of a presumption of paternity and withstanding any attempt to rebut that presumption pursuant to A.R.S. § 25–814. It does not create a third way to establish parentage. Moreover, accepting that argument would mean that proving that a person satisfies a presumption proves the fact at issue, paternity. Presumptions do not work that way, however. *See Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 590 ¶ 50, 65 P.3d 956, 971 (App. 2003) ("Arizona courts generally hold that a presumption is a procedural device that shifts the burden of producing contrary evidence to the party opposing the presumed fact but leaves the burden of persuasion on the proponent of the evidence."). Even with the benefit of the presumption, a man must still prove that he is the child's father.

The dissent also disputes that parentage in Arizona is based only on biology or adoption. The dissent argues that a man may be legally deemed a father of a child born out of wedlock through the voluntary acknowledgement procedure set forth in A.R.S. § 25–812 without proving a biological relationship to the child. *See infra* ¶28. But although the acknowledgment procedure does not require a man to present proof that he is the child's biological father, in filing an acknowledgement, a man declares that he is the child's "natural father" and that he is "the only possible father of the child." *See* Ariz. Dep't of Econ. Sec., *Notice of Alternatives, the Legal Consequences and Rights and Responsibilities*, available at http://www.azdhs.gov/documents/licensing/vital-records/register-acknowledgement-paternity.pdf (last visited June 2, 2017); *see also* A.R.S. §§ 25–812(D), (F) (requiring the filing of the acknowledgement and receipt of the notice). The man is therefore claiming that he is the child's biological father. In addition, if the acknowledgement is challenged, the challenge will be resolved by genetic testing of the child, mother, and the alleged father. *See* A.R.S. § 25–812(E). The court will be required to vacate the determination of paternity if it "finds by clear and convincing evidence that the established father is not the biological father of the child." *Id.* Thus, even in cases of voluntary acknowledgement, biology is the basis of determining paternity.

3. Of course, a woman who is using a surrogate to give birth to her biological child cannot be prohibited from proving that she is the child's biological mother. *Soos v. Superior Court*, 182 Ariz. 470, 475, 897 P.2d 1356, 1361 (App. 1994) (holding that the statute prohibiting surrogacy contracts, A.R.S. § 25–218, unconstitutionally violated the biological mother's right to equal protection of the laws because it did not allow her to prove maternity, but did allow the surrogate's husband to rebut the presumption of paternity). Nevertheless, to the extent that the mother cannot prove that she is the child's biological mother, the surrogate who gave birth to the child is deemed the child's "legal mother." A.R.S. § 25–218(B). Moreover, in a maternity action under A.R.S. § 25–806(B), the petition must allege that a woman "is delivered of a child" and that the woman is the child's mother.

is neither surprising nor troublesome from a constitutional perspective"). Because the biological difference between men and women is the reason for the statute, and biology is used specifically to determine paternity, A.R.S. § 25–814(A) cannot be read gender-neutrally as a presumption of *parentage* statute.

¶ 19 The third flaw in the analysis is that replacing the male-specific language of A.R.S. § 25–814(A) with gender-neutral terms does not provide *any* benefit to Oakley or to any person in a same-sex marriage seeking to establish parentage through the presumption statute. Arizona Revised Statutes Section 25–814(C) provides that any presumption established under A.R.S. § 25–814(A) may "be rebutted by clear and convincing evidence." Because Oakley and other similarly-situated spouses are never biologically related to the children involved in the dissolution proceedings, even if the statute is read gender-neutrally, the other spouse will always defeat the presumption by proving that the former spouse is not biologically the child's parent.

¶ 20 The *McLaughlin* court avoided this problem by invoking the doctrine of equitable estoppel, holding that the child's biological mother could not rebut the presumption of paternity because she and her spouse had expressly and unequivocally agreed in writing that they would be the child's parents and share custody. 240 Ariz. at 566 ¶ 21, 382 P.3d at 124. Whether that doctrine can apply to determine a child's parentage, its fortuitous applicability to a given case does not help resolve this issue of statutory interpretation. Not every same-sex couple will have a written agreement clearly establishing their intent. Here, for example—although our holding that A.R.S. § 25–814(A) does not apply to this case obviates our need to resolve the applicability of equitable estoppel—the family court based its estoppel finding on the testimony of Turner and Oakley and evidence of their social media postings, without evidence of any formal written agreement. The applicability of clear and plain statutory language in such a weighty matter as a child's parentage should not depend on the quality of the documentation of a couple's intent.

¶ 21 Oakley attempted to resolve the statutory problem at oral argument before this Court by contending that A.R.S. § 25–814(C) should be interpreted in cases involving same-sex spouses to limit rebuttal evidence only to evidence that the biological mother had not consented to share parental rights with her spouse. But nothing in the language of that subsection indicates that rebuttal evidence should be so limited. Moreover, such an interpretation would mean that the statute would apply differently depending on whether the disputing parties are a same-sex or an opposite-sex couple. An opposite-sex spouse, for example, could defeat a presumption of paternity by presenting clear and convincing evidence that the presumed father is not the child's biological father. A same-sex spouse, in contrast, could rebut the presumption only by showing he or she did not consent to being a co-parent with the presumed parent. Nothing in A.R.S. § 25–814's language allows such an outcome, and such an interpretation of the statute would raise its own questions of equal protection of the laws.

¶ 22 We sympathize with Oakley's desire to legally establish that she is C.T.'s parent alongside Turner and recognize that this issue will recur in other cases with increasing frequency. We also understand C.T.'s need—and the need of every child affected by this issue—to have permanent and stable parental relationships. But the paternity statutes as they are currently written provide no remedy to Oakley, and we cannot rewrite the statutes to do so, no matter how laudable that outcome might be as a matter of public policy. *See New Sun Bus. Park, LLC v. Yuma Cty.*, 221 Ariz. 43, 47 ¶ 16, 209 P.3d 179, 183 (App. 2009) ("Our Legislature did not choose this particular language, however, and we are 'not at liberty to rewrite the statute under the guise of judicial interpretation.'") (quoting *State v. Patchin*, 125 Ariz. 501, 502, 610 P.2d 1062, 1063 (App. 1980)). The remedy for Oakley and others similarly-situated lies not with the courts, but with the Legislature. *See Riepe v. Riepe*, 208 Ariz. 90, 94 ¶ 14, 91 P.3d 312, 316 (App. 2004) ("[C]oncerns about the social ramifications of this provision are more appropriately raised to

the legislature."). The family court thus erred by finding that Oakley was a presumed parent under A.R.S. § 25–814(A), and we grant relief.

## CONCLUSION

¶ 23 For the foregoing reasons, we accept jurisdiction, grant relief, and reverse the family court's order finding that Oakley is the presumed parent of C.T. under A.R.S. § 25–814(A)(1).

WINTHROP, J., dissenting:

¶ 24 I respectfully dissent. The majority contends the presumption of paternity in A.R.S. § 25–814(A) does not apply to Oakley in this case. I disagree.

¶ 25 In *McLaughlin v. Jones*, another panel of this court correctly concluded that the Supreme Court's decision in *Obergefell v. Hodges* requires a gender-neutral interpretation of A.R.S. § 25–814(A). *See McLaughlin*, 240 Ariz. at 564, ¶ 14, 382 P.3d at 122. A gender-neutral interpretation of the statute allows courts to apply the presumption of paternity to females such as Oakley, who are "married [to the mother of the child] at any time in the ten months immediately preceding the birth." A.R.S. § 25–814(A)(1). This interpretation is consistent with *Obergefell*, which recognized that ensuring same-sex couples have the right to marry provides "profound benefits" to the "hundreds of thousands of children [that] are presently being raised by such couples." *Obergefell*, 135 S.Ct. at 2600.

¶ 26 The New York Court of Appeals came to a similar conclusion last year in *Brooke S.B. v. Elizabeth A.C.C.*, 28 N.Y.3d 1, 39 N.Y.S.3d 89, 61 N.E.3d 488, 498 (2016). There, the court departed from its historically strict interpretation and application of the term "parent," and concluded that a person who is not a biological or adoptive parent, but who has agreed with the biological parent of the child to conceive and raise the child as co-parents, may obtain standing as a "parent" to seek visitation and custody. *Brooke S.B.*, 39 N.Y.S.3d 89, 61 N.E.3d at 498–501. In so deciding, the court recognized that the "foundational premise of heterosexu-

al parenting and nonrecognition of same-sex couples is unsustainable" in light of the enactment of same sex marriage laws and the Supreme Court's holding in *Obergefell. Id.*, 39 N.Y.S.3d 89, 61 N.E.3d at 498. Further, the court emphasized that "an overly-restrictive definition of 'parent' ... sets too high a bar for reaching a child's best interest and does not take into account equitable principles...." *Id.*, 39 N.Y.S.3d 89, 61 N.E.3d at 500.

¶ 27 Additionally, because I believe *Obergefell* mandates a gender-neutral interpretation of A.R.S. § 25–814(A), I disagree with the premise that this court should decline to apply such an interpretation on the basis that it will "disrupt the statutory scheme" of Arizona's paternity statutes. Affording equal rights of parentage to same-sex spouses would instead foster "the permanency and stability important to children's best interests" and should take priority over any speculative fears of disrupting the statutory scheme. *Obergefell*, 135 S.Ct. at 2600. *See also Brooke S.B.*, 39 N.Y.S.3d 89, 61 N.E.3d at 498–99 (stating that a proper test for determining parentage "ensures equality for same-sex parents and provides the opportunity for their children to have the love and support of two committed parents").

¶ 28 The majority also asserts that, under Arizona law, biology and adoption are the only mechanisms that establish legal parenting status in Arizona. But, where a child is born out of wedlock, legal parentage may be established through a properly executed voluntary acknowledgement of paternity. *See* A.R.S. § 25–812. Under A.R.S. § 25–812(D), after signing a voluntary acknowledgment of paternity (and completing the other required actions outlined in § 25–812(D)), a person may be deemed the legal father of a child. Although the goal of § 25–812 may be to identify the biological father in situations where paternity cannot be presumed under A.R.S. § 25–814, in practice, an individual who has neither biological nor adoptive ties to a child can be deemed the legal father. *See Andrew R. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 453, 455–61, ¶ 18, 224 P.3d 950, 952–58 (App. 2010). Thus, although the majority may be correct that A.R.S. § 25–814(A) is rooted

in biology, interpreting the paternity statutes as "gender specific" does not prevent a male without a biological or adoptive connection to a child from obtaining legal parentage rights through other means.

¶ 29 Finally, I recognize that A.R.S. § 25–814(C) allows for the presumption of paternity to be rebutted. Regardless of that fact, because a male in Oakley's position would automatically be afforded the presumption of parentage, I agree with my colleagues in *McLaughlin* that a female in the same position is entitled to the same presumptive right. Refusing to interpret A.R.S. § 25–814(A) in a gender-neutral manner denies any meaningful remedy for an already explicitly acknowledged parent, which is the case here. More importantly, such insupportable statutory construction will force courts to "permanently sever strongly formed bonds between children and adults with whom they have parental relationships." *Brooke S.B.*, 39 N.Y.S.3d 89, 61 N.E.3d at 498.

¶ 30 Accordingly, I would accept review and deny relief.