NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO
J.F., A.F., A.F., AND L.F.

No. 1 CA-JV 22-0220
FILED 2-23-2023

---

Appeal from the Superior Court in Maricopa County
No. JD20186
The Honorable Robert Ian Brooks, Judge

**AFFIRMED**

---

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant Jeremiah F.*

David W. Bell, Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant Virginia M.*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Aimee D. Youngblood
*Counsel for Appellees J.F., A.F., A.F., and L.F.*

---

## MEMORANDUM DECISION

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Michael J. Brown joined.

---

**CATLETT**, Judge:

¶1          Virginia M. ("Mother") and Jeremiah F. ("Father") appeal the juvenile court's order terminating their parental rights to their three children, J.F. (born in 2016), A.A.F. (born in 2017), and A.F.F (born in 2019) (the "children").[1]  The court concluded that the Department of Child Safety (the "Department") established by clear and convincing evidence that the children have been in out-of-home placement for fifteen months or longer, Mother and Father have been unable to remedy the circumstances causing out-of-home placement, and there is a substantial likelihood that parents will not be capable of exercising proper and effective parental care and control in the near future.  *See* A.R.S. § 8-533(B)(8)(c).  The court also found that the Department established by a preponderance of the evidence that severance is in the children's best interests.  Because reasonable evidence supports the court's factual findings and a reasonable factfinder could conclude that severance is appropriate, we affirm.

---

[1] Mother and Father also have a fourth child, L.F., born in 2021, who is included in the caption.  The juvenile court held a trial on both the motion for termination of parental rights as to J.F., A.A.F., and A.F.F., and the Department of Child Safety's dependency petition as to L.F.  The juvenile court made a dependency finding as to L.F.  Mother's notice of appeal states that she appeals both the severance of her parental rights and the dependency finding.  Father's notice of appeal states only that he appeals the severance of his parental rights.  Neither parent makes any argument on appeal as to the dependency finding.  Both parents, therefore, have waived any challenge to the dependency finding as to L.F., and thus we do not consider the issue.  *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577–78 ¶¶ 5–6 (App. 2017) ("[W]e adhere to the policy that it is generally not our role to *sua sponte* address issues not raised by the appellant."); *Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 459 ¶ 29 (App. 2000) ("[I]ssues not clearly raised in appellate briefs are deemed waived.").

**FACTS AND PROCEDURAL BACKGROUND**

¶2　　　　Mother and Father are the children's biological parents.　In December 2019, police responded to an emergency call at the children's paternal grandmother's house**.**　Mother alleged that Father pulled her hair to get her out of a parked car and closed the car door on her ankle, breaking it, while the children were in the car.　But Mother denied that Father purposely closed the door on her ankle.　The police contacted the Department.

¶3　　　　When the incident occurred, Father was wearing an ankle monitor for pre-trial services due to pending criminal charges.[2]　A few days later, the superior court issued a bench warrant on the criminal charges after Father failed to appear for a court hearing, and he was arrested.　Father remained incarcerated from December 2019 until July 31, 2020.　In September 2021, he pled guilty to aggravated assault, and the court placed him on three years of supervised probation.

¶4　　　　On January 6, 2020, the Department took temporary custody of the children after maternal grandmother called the Department claiming Mother had left the children in her care and not returned for three days. The Department placed the children in a licensed foster care home.　Two days later, the Department filed a dependency petition for the children.　As to Mother, the Department alleged she was unwilling or unable to provide proper and effective parental care and control due to domestic violence, lack of a safe and stable home environment, and inability to provide for the children's basic needs.　As to Father, the Department alleged he was unwilling or unable to provide proper and effective parental care and control due to domestic violence, inability to provide for the children's basic needs, and incarceration.　The Department reported that J.F. and A.A.F. had special needs requiring services due to developmental delays and rotten teeth.

¶5　　　　The Department referred Mother and Father for reunification services, including parenting classes, parent-aide services, case-aide services, domestic violence counseling, supervised visits only (SVO),

---

[2] In September 2018, Father stabbed his sister's ex-boyfriend in the neck and abdomen, because the boyfriend had allegedly raped his daughter (not subject to this case) and his niece.　Father was charged with attempt to commit second degree murder and two counts of aggravated assault.

substance use testing, transportation services, and psychological services for Mother.

¶6          Paternal grandmother filed a motion to intervene in February 2020, and after an evidentiary hearing, the juvenile court granted her physical custody of A.F.F., and eventually transitioned A.A.F. and J.F. to her care as well. Both parents entered no-contest pleas to the dependency allegations, and in April 2020, the Department found the children dependent as to both parents.

¶7          After Father's release from jail in August 2020, Mother began living with him, and they had supervised visits with the children together. In February and March 2021, both parents filed motions for the children's return to their physical custody. Ariz. R. P. Juv. Ct. 59 (current version at Rule 342). In April, the juvenile court conducted a two-day hearing. Between day one and day two of the hearing, another domestic violence incident occurred. After an argument, Father called the police to report that Mother left the house and drove while intoxicated. Father also alleged that Mother attempted to run him over with her car. Mother denied that she had been drinking and stated that after she returned home, Father grabbed her purse and threw it on the carport to prevent her from leaving. Mother used a ladder to retrieve her purse, despite being pregnant with the parent's fourth child, L.F., and she denied attempting to run Father over. The police report stated that Mother was not intoxicated and that "[Father's] allegations and his recollections of events kept changing, didn't make sense or were unfounded." Subsequently, the parents no longer participated in visits together.

¶8          The juvenile court denied both parents' motions, finding that the parents' "ongoing domestic violence, as well as the minimization of that ongoing domestic violence, places their children at a substantial risk of physical, mental, and emotional harm." The court concluded that the parents "minimized this violent history demonstrating that the parents have not made the behavioral changes necessary for the children to safely reside with them."

¶9          Mother later reported that she no longer resided with Father nor maintained a relationship with him, and in August 2021 she obtained her own apartment. The Department told Mother that a safety plan needed to be created for L.F. to return home after his birth, and that Father could not know Mother's new address; however, the Department later learned that Father did know her new address. Mother gave birth to L.F. on August 1, and Father drove Mother to the hospital and stayed for L.F.'s birth. The

Department immediately placed L.F. in paternal grandmother's physical custody.

¶10        On August 18, 2021, the Department filed a dependency petition for L.F., alleging both parents were unwilling or unable to provide L.F. with proper and effective parental care and control due to domestic violence and an inappropriate home environment, as well as substance abuse for Mother.  Both parents denied the allegations in the dependency petition.

¶11        In September 2022, the Department moved to terminate Mother's and Father's parental rights of the three other children based on fifteen months' time-in-care.  A.R.S. § 8-533(B)(8)(c).  The juvenile court conducted a five-day hearing over several months on both the motion for termination as to the three children and the dependency petition as to L.F.  The court heard testimony from Mother, Father, several professionals who have assisted the parents, and two of Father's uncles.

¶12        Based on Mother's testimony, the juvenile court concluded that Mother "continues to lack insight into the nature of the domestic violence, its effects on her, and its effects on her children."  The juvenile court found that "Mother was not intentionally attempting to mislead the Court, but that her testimony demonstrated an inability or unwillingness to acknowledge the severity and history of domestic violence, even when confronted with her own prior statements."  The juvenile court concluded that Mother's continued minimization of domestic violence "puts the children at a substantial risk of harm."

¶13        Based on Father's testimony, which the juvenile court characterized as "entirely incredible" and demonstrating Father's controlling tendencies, Father showed "an inability to recognize the children's needs or a disregard for those needs."  "Father refused to make any acknowledgment of his own role or responsibility, demonstrating a severe lack of insight."  In the juvenile court's eyes, "Father insinuated that, but for the Court's encouragement that the parents not live together, Mother and Father would still live together."

¶14        The juvenile court credited some of the professionals' testimony about the parents' relationship.  The Department's case manager testified that "Mother would make justifications on behalf of Father," which the juvenile court found "credible and insightful."  The juvenile court heard testimony about Mother continuing to attend a six-person church with Father and gave the case manager's opinion about the risks posed by doing

so "significant weight." The juvenile court also heard testimony from Mother's therapist about the progress Mother had made in therapy, but the juvenile court found that Mother's self-reports to the therapist "were significantly deficient about the nature and extent of her ongoing relationship with Father, as well as the nature and extent of their prior domestic violence history."

¶15 Finally, the juvenile court considered testimony from two of Father's uncles. The first "candidly acknowledged that it was his opinion that the parents were in a relationship, that Mother and Father would parent together, and that . . . there had been no domestic violence in two years." While the other uncle "did not entirely state that Mother and Father were in a relationship," the juvenile court inferred "from some of his answers that he believed that they either were or would be if possible."

¶16 Based on the testimony and evidence, the juvenile court terminated Mother's and Father's parental rights to J.F., A.A.F., and A.F.F., and made a dependency finding for L.F. Mother and Father timely appealed from the juvenile court's order. We have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶17 Mother and Father contend that the Department failed to present sufficient evidence to support the termination of their parental rights. "Parents have a fundamental right to raise their children as they see fit, but that right is not without limitation." *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79 ¶ 14 (App. 2001). To terminate a parent's rights, the juvenile court must find by clear and convincing evidence at least one of the grounds in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that severance is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶¶ 41–42 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). The juvenile court "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148 ¶ 1 (2014).

¶18 We "will affirm a severance order unless it is clearly erroneous." *Id.* at 151 ¶ 18; *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 3 (2016). In determining on appeal whether the Department satisfied its burden of proof, we will affirm unless we conclude as a matter of law that no reasonable fact-finder could have found that burden was sustained. *See Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95 ¶ 10 (App. 2009). We

recognize the juvenile court is in the best position to assess the credibility of witnesses, weigh the evidence, and resolve disputed facts. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009). We, therefore, view the evidence in the light most favorable to sustaining the court's ruling and will not disturb a factual finding unless there is no reasonable evidence to support it. *Adrian E. v. Dep't of Child Safety*, 239 Ariz. 240, 241 ¶ 2 (App. 2016); *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004).

## A. Fifteen-Months' Out-of-Home Placement.

**¶19** Mother and Father argue that the juvenile court erred when it terminated their parental rights under the fifteen-months' time-in-care ground. A.R.S. § 8-533(B)(8)(c). Severance under this ground required clear and convincing evidence that the children had been in an out-of-home placement for a cumulative total period of fifteen months or longer; the Department made a diligent effort to provide the parents appropriate reunification services; the parents had been unable to remedy the circumstances that caused the children to be in an out-of-home placement; and there is a substantial likelihood that the parents will not be capable of exercising proper and effective parental care and control in the near future. A.R.S. § 8-533(B)(8)(c).

**¶20** Because the dependency action began in January 2020, when the Department took temporary custody of the children, and the severance of parental rights occurred in September 2022, the children have been in an out-of-home placement for more than fifteen months.

### 1. Diligent Reunification Efforts.

**¶21** Mother and Father both contend that the Department did not make diligent reunification efforts. The juvenile court must "consider the totality of the circumstances when determining whether [the Department] has made diligent efforts." *Donald W. v. Dep't of Child Safety*, 247 Ariz. 9, 23 ¶ 49 (App. 2019). "[A] diligent effort requires—at the least—[the Department] to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances *as they arise throughout the time-in-care period*, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id.* at 23 ¶ 50 (citation omitted). Father also contends that the juvenile court failed to consider the "totality of the circumstances" required by *Donald W.*

**¶22** Regarding the Department's diligent reunification efforts, the juvenile court found that "the Department provided Mother and Father

with an array of services that were tailored to the reasons why the children were in an out-of-home placement." As to the impact of those services on Father, the juvenile court explained that "Father did not successfully complete many services, and his various service provide[r] notes reflect ongoing diminished capacities." As to Mother, "despite her ability to complete services, she has not been able to fully recognize the substantial risk of harm her relationship with the Father places the children in." The juvenile court concluded that additional services would be "futile" because of the length of time Mother had received domestic violence services and "yet still remains severely diminished in her recognition."

¶23 The Department contends that Mother and Father have waived their diligent efforts arguments because a parent must object to the adequacy of services before the severance hearing. When the juvenile court record shows that the Department ordered specific services according to a case plan, and the juvenile court finds during implementation of the plan that the Department made reasonable efforts to provide those services, a parent who does not contemporaneously object cannot later challenge that finding on appeal. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178–79 ¶ 16 (App. 2014); *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 349 ¶ 19 (App. 2013).

¶24 Here, the juvenile court held seven separate report and review hearings, in June 2020, August 2020, November 2020, February 2021, August 2021, September 2021, and January 2022. Each minute entry contained findings that the Department made reasonable efforts. *See Shawanee S.*, 234 Ariz. at 179 ¶ 17. The Department submitted progress reports for each hearing, describing the services provided to each parent and their progress towards the case plan goals. *Id.* Additionally, the juvenile court issued orders in August 2020, December 2020, March 2021, August 2021, November 2021, and January 2022. Each listed the services provided and found that the Department made reasonable efforts. Neither Mother nor Father objected to the juvenile court's diligent effort findings. We, therefore, conclude that Mother and Father waived the ability to challenge the juvenile court's finding that the Department made diligent reunification efforts. *See id.*; *Bennigno R.*, 233 Ariz. at 349 ¶ 19.

¶25 Notwithstanding waiver, we have reviewed the record and conclude that it contains sufficient evidence supporting the juvenile court's factual findings and its conclusion that the Department made reasonable efforts to provide Mother and Father appropriate reunification services, and any additional services would be futile. *See Bennigno R.*, 233 Ariz. at 350 ¶ 20. Although Father argued at the termination hearing that he should

have received a psychological evaluation, he never requested this additional service before the hearing. *See Bennigno R.*, 233 Ariz. at 349 ¶ 19. Nevertheless, the Department is not "required to provide every conceivable service." *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994) (citations omitted).

### 2. Inability to Remedy the Circumstances.

**¶26** Mother and Father both contend that the Department failed to prove that they were unable to remedy the circumstances causing the children to be in an out-of-home placement. Failure of a parent to "remedy the circumstances that cause [a] child to be in an out-of-home placement" is a proxy for parental unfitness because it demonstrates the parent's inability "to properly parent his/her child." *Alma S.*, 245 Ariz. at 150 ¶ 10 (citation omitted). The "circumstances" causing the child to be in an out-of-home placement must be "existing at the time of the severance." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330 ¶ 22 (App. 2007).

**¶27** The juvenile court concluded that neither Mother nor Father had remedied the circumstances causing the out-of-home placement. Father "failed to recognize his children's needs or has been unwilling to address them," did not "see his children's special needs as serious or as requiring special attention," and "entirely minimized the domestic violence," all of which "places the children at a substantial risk of harm." The court also found that Father was "unwilling to listen to any advice or guidance." Father argues that he has completed or substantially completed services designed to rectify the circumstances that brought the children into the Department's care.

**¶28** The record sufficiently supports the court's findings that Father did not fully engage in services and cannot recognize his children's needs. Father did not complete parent-aide services and closed out of Nurturing Parenting for nonengagement. During visits, Father exhibited anger towards the Department's staff, lack of control over the children's behaviors, and the Department cited numerous safety concerns at Father's home. Father did not listen to advice, as he agreed that he told the children not to listen to the case aide during a supervised visit. After the Department requested Father have visits at their office due to safety concerns, Father canceled visits. Although Father completed domestic violence, anger management, and parenting sessions, he testified that he completed a lot of the online sessions while working.

¶29        Father's testimony also supports the court's finding that he continues to have contact with Mother and minimizes the role of domestic violence.  Father testified that the children are in the Department's care only because of maternal grandmother's behavior.  When asked if he recalled the Department telling him that domestic violence is a concern, he stated, "no."  Father also testified that if he could make the decision, he would want to raise the children with Mother.  Father has not filed for divorce and stated he intends to remain married.  When asked if the case were dismissed and the children returned whether he would live with Mother, Father stated, "if it's okay with the courts."  Father continues to see Mother at small gatherings four times per week.  Although Father stated that he is not in a relationship with Mother, the court found uncle's testimony that the parents are still in a relationship to be credible.

¶30        As to Mother, the juvenile court found that while Mother "is now able to recognize the needs of her children and can appropriately care for them," she "is either unwilling or unable to acknowledge the nature, history and extent of both the domestic violence between herself and Father, and the . . . control and power that Father still exerts over her."  The juvenile court concluded that "but for the [c]ourt's and Department's involvement, Mother would remain in a physical and ongoing relationship with the Father."  The juvenile court believed that the ongoing relationship between Mother and Father continued to "place[] the children at a substantial risk of harm."  Mother contends that her only relationship with Father is that she attends small gatherings with him, and since April 2021 there have been no domestic violence incidents.

¶31        Given the deferential standard of appellate review, the record supports the juvenile court's findings that Mother fails to recognize the role of domestic violence in her relationship with Father, which places the children at substantial risk of harm.  *See Jordan C.*, 223 Ariz. at 93 ¶ 18.  When initially asked about the December 2019 incident, Mother called it "a little disagreement."  Later, when asked if Mother and Father had incidents of physical violence before December 2019, Mother testified there were none that she remembers.  But Mother then agreed during her testimony that the parents had other domestic violence incidents before December 2019 involving physical violence.  Mother also acknowledged that she had been made aware domestic violence was a concern for the children's return when the Department took temporary custody of the children but continued to live with Father until April 2021.

¶32        Mother filed an order of protection against Father in October 2021 but testified that she did not obtain it out of fear but rather to show the

Department she could keep her son safe; however, she allowed the order to lapse. The case manager testified that Mother only filed the order because she thought that's what the Department wanted. Mother testified that during a team decision-making meeting to discuss safety planning in preparation for L.F.'s birth, she told the Department that she would not disclose her new address to Father when in fact, Father already knew the address. The case manager testified that Mother's disclosure of the address concerned the Department due to the cycle of abuse and "if Mother is still actively participating in that cycle, then again, that could affect the children." The juvenile court found it "credible and insightful" that when Mother discussed safety planning with the case manager, Mother stated, "if that's what [the Department] wants, that's what I'll do."

**¶33**      Although Mother testified that she is not in a relationship with Father, she continues to see Father at small gatherings four times per week. The case manager testified that Mother had not protected herself from Father by actively minimizing Father's erratic behaviors and anger; the court gave this portion of her testimony significant weight. The juvenile court found that Mother's choice to spend ten hours per week in close personal contact with Father demonstrated a lack of understanding of Father's control over her. Additionally, contact has occurred between the parents when Father has been over to Mother's address (albeit not inside) several times to deliver furniture. Mother also stated she has been to Father's house once or twice since she moved out. Father also drove Mother to the hospital for L.F.'s birth.

**¶34**      Mother also testified that she has divorce papers and thinks they were filed, but she has not been sure of the process to finalize them. The juvenile court did not find Mother's testimony that finalizing the divorce was too difficult to be credible; instead, the court inferred that "Mother did not do so because of the control Father exerts over her and interprets it as evidence that Mother will return to Father as soon as the [c]ourt and Department are not involved." Again, Father's uncle, who routinely interacts with Mother and Father, testified that he believes Mother and Father are still in a relationship because they're husband and wife.

**¶35**      Because reasonable evidence supports the juvenile court's factual findings, we cannot set them aside on appeal. *See Jordan C.*, 223 Ariz. at 93 ¶ 18. We also cannot say, based on the record evidence, that no reasonable factfinder could conclude that Mother and Father have been unable to remedy the circumstances that caused the children to be in an out-of-home placement. *See Denise R.*, 221 Ariz. at 95 ¶ 10.

### 3.    Ability to Parent in the Near Future.

**¶36**        Mother and Father both contend that the Department failed to prove that they would not be capable of exercising proper and effective parental care and control in the near future.

**¶37**        As to Father, the court found that despite the matter continuing for "almost two-and-a-half years," Father's minimization and inability to recognize the danger domestic violence poses to the children prevents him from being able to parent in the near future.  Father argues that the juvenile court failed to give sufficient weight to the fact an incident of domestic violence has not been reported in the last fifteen months and that passage of time cannot be sufficient for severance.  Although no domestic violence incident has occurred in the last fifteen months, Father's testimony supports the juvenile court's concern that without the court's intervention, Father would live with Mother and the children again.  Father's minimization of domestic violence, even after two-and-a-half years of services that included domestic violence classes, prevents him from being able to parent in the near future.

**¶38**        Father also argues that this case is similar to *Brionna J. v. Dep't of Child Safety*, 1 CA-JV 21-0039 (Ariz. App. May 24, 2022).  Since Father's opening brief, the Arizona Supreme Court vacated *Brionna J.* and announced that a written opinion explaining the Court's reasons for doing so will follow.  *Brionna J. v. Dept of Child Safety/A.V.*, CV-22-0158-PR (Ariz. Jan. 11, 2023).

**¶39**        As to Mother, the court found that she also cannot recognize the danger of the parents' relationship.  Mother argues that the juvenile court unfairly minimized Mother's progress, demonstrated by her completion of services.  The juvenile court fully acknowledged that "Mother has made significant progress in recognizing that the children do have both basic and special needs that she had previously failed to recognize."  But the court, nonetheless, found that "her ongoing relationship with Father continues to pose a substantial risk of harm and Mother has only minimally improved here.  She has made some outward steps, such as obtaining her own housing, but the remainder of her actions demonstrate her intent to remain in this dangerous relationship."  Likewise, the case manager testified that although Mother engaged in services, she has not made the behavioral changes necessary to reunify with the children.

**¶40**        We also acknowledge that Mother has progressed by completing required services and obtaining her own housing.  The juvenile

court found, however, that "Mother has only minimally improved here" specifically regarding her *ongoing relationship with Father*. Much of that conclusion was based on factual inferences and credibility determinations stemming from live testimony. As an appellate court, we cannot reweigh those inferences and determinations. *Jordan C.*, 223 Ariz. at 93 ¶ 18. The record sufficiently supports the juvenile court's conclusion that Mother's continued minimization of domestic violence and contact with Father would put the children at risk of substantial harm, and therefore Mother will not be able to parent the children in the near future.

## B.    Best Interests.

**¶41**        Only Father challenges the court's best interests finding, asserting the Department failed to prove that termination of his parental rights would be in the children's best interests. *Kent K.*, 210 Ariz. at 288 ¶ 42.

**¶42**        Once a parent is found unfit, "the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Demetrius L.*, 239 Ariz. at 4 ¶ 15. Severance is in the children's best interests if the Department proves by a preponderance of the evidence that "(1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S.*, 245 Ariz. at 150 ¶ 13; *Kent K.*, 210 Ariz. at 288 ¶¶ 41–42. "It is well established in state-initiated cases that the child's prospective adoption is a benefit that can support a best-interests finding." *Demetrius L.*, 239 Ariz. at 4 ¶ 16.

**¶43**        The juvenile court found that termination would be in the children's best interests, partly because paternal grandmother "is willing to adopt the children and provide them with permanency." While Father does not challenge the children's adoptability, he argues that the court did not give sufficient weight to Father's reunification efforts or "to the fact that the children and Father have a number of years to have a normal relationship together." To the contrary, the juvenile court considered those factors, stating "[t]he court has considered the totality of the circumstances, including both parents' efforts toward reunification, the parent-child bond, and fitness to parent."

**¶44**        And while the juvenile court should consider the parent's rehabilitation efforts, it should not subordinate the children's interests to the unfit parent's interests. *Alma S.*, 245 Ariz. at 151 ¶ 15. The juvenile court found that paternal grandmother can meet the children's needs, whereas

"Father still does not recognize his children's needs." Additionally, adoption provides the children permanency and stability in their relationship with paternal grandmother, after the dependency case has been pending for about three years. *See Demetrius L.*, 239 Ariz. at 5 ¶ 20. Therefore, the termination of Father's parental rights weighs in the children's best interests to provide them with a safe and stable home life. *See id.* at 4 ¶ 15.

## CONCLUSION

¶**45** We affirm the juvenile court's judgment terminating Mother's and Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA